# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA

PORTIA E. MCCOLLUM, AS TRUSTEE )
OF THE MCCOLLUM FAMILY TRUST, )
Derivatively on Behalf of Nominal )
Defendant TARGET CORPORATION, )
                         )
         Plaintiff, )
                         )
v.                         )
                         )
BRIAN C. CORNELL, et al.,      ) Case No. 2:25-cv-00021-JLB-KCD
                         )
         Defendants, )
                         )
and                       )
                         )
TARGET CORPORATION,        )
                         )
         Nominal Defendant. )
                         )

CHAMANDEEP KAUR, Derivatively on )
Behalf of TARGET CORPORATION, )
                         )
         Plaintiff, )
                         )
v.                         )
                         )
BRIAN C. CORNELL, et al.,      )
                         ) Case No. 2:25-cv-00043-JLB-NPM
         Defendants, )
                         )
and                       )
                         )
TARGET CORPORATION,        )
                         )
Nominal Defendant.        )
                         )

|  |  |
|---|---|
| RYAN MURPHY, Derivatively on Behalf of TARGET CORPORATION, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) |
|  | ) Case No. 2:25-cv-00062 |
| BRIAN C. CORNELL, et al., | ) ) |
| Individual Defendants, | ) ) |
| -and- | ) ) |
| TARGET CORPORATION, | ) ) |
| Nominal Defendant. | ) ) ) |


# MOTION TO CONSOLIDATE RELATED DERIVATIVE ACTIONS AND APPOINT CO-LEAD COUNSEL

## I.  INTRODUCTION

Plaintiffs Portia E. McCollum and Ryan Murphy ("Moving Plaintiffs"), derivatively on behalf of Nominal Defendant Target Corporation ("Target" or the "Company"), respectfully submit this Memorandum of Law in support of their motion to: (1) consolidate the above-captioned stockholder derivative actions (the "Related Actions") pursuant to Rule 42(a) of the Federal Rules of Civil Procedure; and (2) appoint Rigrodsky Law, P.A. ("Rigrodsky") and Levi & Korsinsky, LLP ("L&K") as Co-Lead Counsel and Cook Law, P.A. ("Cook Law") as Liaison Counsel for Plaintiffs.[1]

Consolidation is appropriate because the Related Actions arise out of the same alleged breaches of fiduciary duty by substantially the same defendants based on the same alleged underlying misconduct. Consolidation will streamline the proceedings, save judicial resources, and avoid the possibility of inconsistent findings or rulings. Moving Plaintiffs, who have agreed to work together for the benefit of Nominal Defendant Target, also submit that, to ensure the efficient litigation of the Related Actions, Rigrodsky and L&K should be appointed Co-Lead Counsel and Cook Law appointed as Liaison Counsel.[2]

---

[1]  "Plaintiffs" means Moving Plaintiffs and Plaintiff Chamandeep Kaur ("Kaur").

[2]  Counsel for Defendants have indicated that they take no position with regard to the relief sought herein.

Moving Plaintiffs submit that they and chosen counsel are the most qualified to lead this important litigation on behalf of Target. Moving Plaintiffs, who have been continuous owners of Target stock at all relevant times,[3] filed their detailed derivative complaints only after conducting extensive independent pre-filing investigations.  Plaintiff Kaur, on the other hand, copied substantial portions of Plaintiff McCollum's first-filed complaint, evincing a lack of vigor in pursuing these valuable claims on behalf of Target.[4] Counsel for Plaintiff Kaur also rejected Moving Plaintiffs' offer to work together under this proposed leadership structure.

Rigrodsky and L&K, whose firm resumes are attached hereto as Exhibits C and D, have earned a national reputation for excellence and success in shareholder derivative actions. The firms have the requisite knowledge of the applicable substantive law and are well suited to navigate the procedural challenges that arise in complex litigation.  Accordingly, and for the additional reasons below, the Court should appoint Rigrodsky and L&K as Co-Lead Counsel and Cook Law as Liaison Counsel.

---

[3]    McCollum (on behalf of the McCollum Family Trust) has continuously owned Target stock since November 2017.  Murphy has continuously owned Target stock since August 2006.

[4]    Attached hereto as Exhibit A is a redline comparison of the first-filed complaint in the *McCollum* Action and the complaint in the *Kaur* Action (both defined below), which shows ***Kaur and his counsel plagiarized well over one hundred original allegations from McCollum's complaint word-for-word***.  Attached hereto as Exhibit B is a 38-page sequential excerpt from Exhibit A showing that every single one of the "Substantive Allegations" in the Kaur complaint (¶¶ 36 – 132) were copied verbatim from the McCollum complaint (except that Kaur deleted all of the citations used by McCollum to support those allegations making Kaur's complaint notably weaker than McCollum's).

## II.   STATEMENT OF FACTS

The Related Actions allege that certain officers and directors of Target breached their fiduciary duties, and otherwise violated the law, by intentionally and/or recklessly making or allowing the dissemination of materially false and misleading statements concerning the risk to the Company arising from its environmental, social, and governance ("ESG") and diversity, equity, and inclusion ("DEI") initiatives. Specifically, in April 2016, when the Company announced a policy allowing transgender customers to use any bathroom or fitting room, Target faced extreme backlash, including a boycott by more than one million customers. ¶5.[5] Despite prior backlash and boycotts, Target launched a Pride Month campaign in May 2023, which included the sale of Pride-themed merchandise, without regard to the known risk that the campaign would be negatively viewed by a significant portion of Target's consumers, resulting in a foreseeable loss of business and profits. ¶¶6, 9.

The 2023 Pride Month campaign ultimately caused nationwide controversy and boycotts, which resulted in the Company scaling back its campaign and caused both Target's profits and stock price to plummet. ¶7. Ultimately, between May 17, 2023 and June 14, 2023, Target's stock price lost approximately 20% of its

---

[5]    Citations to "¶__" refer to the allegations in the complaint filed in *McCollum v. Cornell, et al.*, Case No. 2:25-cv-00021 (M.D. Fla.) (the "*McCollum* Action") (ECF No. 1).

3

value. ¶¶12, 158. The Company also experienced a drop in sales for the first time in six years, with in-store sales dropping 5.4% and online sales dropping 10.5% during the second quarter of 2023. ¶159. During the Company's earnings call in August 2023, Target's Chief Financial Officer ("CFO"), Defendant Michael Fiddelke, admitted that "traffic and top line trends were affected by the reaction to [Target's] Pride assortment, which launched in the middle of May." ¶163.

### III.    PROCEDURAL HISTORY

On January 9, 2025, plaintiff Portia E. McCollum, as trustee of the McCollum Family Trust, filed a complaint alleging that certain of Target's officers and directors (the "Officers & Directors") breached their fiduciary duties or aided and abetted the breach thereof, violated Sections 14(a), 10(b), and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), wasted corporate assets, and were unjustly enriched in connection with the decision to proceed with the Pride campaign after the negative customer reactions to Target's previous ESG and DEI initiatives, as well as the issuance of the materially false and misleading statements described above. *See McCollum* Action, ECF No. 1.  Thereafter, counsel for plaintiff McCollum contacted counsel for Defendants and obtained waivers of service for each Defendant, which were filed on January 14, 2025. ECF Nos. 7-22.

On January 17, 2025, plaintiff Chamandeep Kaur filed a complaint alleging that the Officers & Directors breached their fiduciary duties or aided and abetted

4

the breach thereof, grossly mismanaged the Company, wasted corporate assets, violated Sections 14(a) and 10(b) of the Exchange Act, and were unjustly enriched in connection with substantially the same misconduct alleged in the *McCollum* Action. *See Kaur v. Cornell, et al.*, Case No. 2:25-cv-00043 (S.D. Fla.) (the "*Kaur* Action"), ECF No. 1.

On January 24, 2025, plaintiff Ryan Murphy filed a complaint alleging that the Officers & Directors, along with former director Mary E. Minnick (together with the Officers & Directors, the "Individual Defendants"), breached their fiduciary duties, violated Sections 14(a) and 20(a) of the Exchange Act, and were unjustly enriched in connection with substantially the same misconduct alleged in the *McCollum* Action. *See Murphy v. Cornell, et al.*, Case No. 2:25-cv-00062 (S.D. Fla.) (the "*Murphy* Action"), ECF No. 1. Thereafter, counsel for plaintiff Murphy contacted counsel for Defendants concerning waivers of service for each Defendant.

Counsel for plaintiff in the *McCollum* Action and counsel for plaintiff in the *Murphy* Action have agreed to work together for the benefit of Target and its shareholders. On January 28, 2025, counsel for Moving Plaintiffs contacted counsel for Defendants regarding their positions on the relief requested in this motion. In response, Defendants indicated that they take no position as to either request.

5

Accordingly, and for the additional reasons set forth below, Moving Plaintiffs respectfully submit that the Related Actions should be consolidated pursuant to Fed. R. Civ. P. 42(a). In addition, as shown below, Rigrodsky and L&K should be appointed as Co-Lead Counsel and Cook Law as Liaison Counsel.

## IV. ARGUMENT

### a. The Court Should Consolidate the Related Actions

The Court may consolidate actions if they involve common questions of law or fact. *See* Fed. R. Civ. P. 42(a). The power to consolidate related actions falls within the Court's broad authority "to control the disposition of the causes of action on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). When the "common question of law or fact requirement" of Rule 42(a) has been satisfied, "trial courts in the Eleventh Circuit are encouraged to make good use of Rule 42(a) in order to expedite the trial and eliminate unnecessary repetition and confusion." *Sanford v. Std. Fire Ins. Co.*, 2023 U.S. Dist. LEXIS 161577, at *2 (M.D. Fla. Sept. 12, 2023) (internal quotations and citations omitted). *See also Pipefitters Local No. 636 Defined Ben. Plan v. Bank of America Corp.*, 275 F.R.D. 187, 192 (S.D.N.Y. 2011) ("Differences in claims [or] defendants…do not render consolidation inappropriate if the cases present sufficiently common questions of fact and law, and the differences do not outweigh the interests of judicial economy served by consolidation.").

"Consolidation of shareholder derivative actions can be particularly beneficial to courts and parties by expediting pretrial proceedings, avoiding needless duplication, and minimizing expenditure of time, effort, and money." *Nally v. Reichental*, 2017 WL 1135122, at *2 (D.S.C. Mar. 27, 2017) (citing *MacAlister v. Guterma*, 263 F.2d 65, 68 (2d Cir. 1958)). Courts routinely consolidate stockholder derivative actions. *See, e.g.*, *Heed v. Miller*, 2018 WL 1532955, at *2 (E.D. Pa. Mar. 28, 2018) (consolidating four stockholder derivative actions); *Millman*, 2004 U.S. Dist. LEXIS 20113, at *2 (N.D. Ga. Oct. 1, 2004) (consolidating three stockholder derivative actions).

Here, the Related Actions each allege breaches of fiduciary duty arising out of the same alleged misconduct – the decision to proceed with the Pride campaign despite prior customer backlash to Target's related ESG and DEI initiatives, the issuance of materially false and misleading statements about the risk associated with Target's ESG and DEI initiatives and the Board of Directors' failure to adequately monitor the business impact of those initiatives. Plaintiffs further allege claims of unjust enrichment, corporate waste, and violations of Section 14(a) of the Exchange Act, all of which arise from the same alleged misconduct as the breaches of fiduciary duty. Thus, the Related Actions each raise substantially similar legal questions, including whether the Individual Defendants breached their fiduciary duties to Target, and would involve essentially the same motion

7

practice, discovery witnesses, documentary evidence, and trial considerations. *See KBC Asset Mgmt. NV v. McNamara*, 78 F. Supp. 3d 599, 602-03 (D. Del. 2015) (consolidating two derivative actions alleging "common (though not identical) facts" against "nearly identical" defendants). Accordingly, consolidation of the Related Actions is appropriate.

### b. The Court Should Appoint Rigrodsky and L&K as Co-Lead Counsel and Cook Law as Liaison Counsel for Plaintiffs

Where, as here, there is a "multiplicity" of stockholder derivative suits, courts are "allowed to combine procedures, appoint lead counsel, recognize steering committees of lawyers, limit and manage discovery, etc. to minimize expense to all litigants and to provide judicial efficiency." *In re Showa Denko, K.K. L-Tryptophan Prods. Liab. Litig.-II*, 953 F.2d 162, 165 (4th Cir. 1992). The appointment of lead counsel has proved to be of great benefit to judicial economy in complex, consolidated cases. *See In re Centurylink Sales Practices & Sec. Litig.*, MDL 17-2795, 2019 U.S. Dist. LEXIS 68679, at *7 (D. Minn. Apr. 23, 2019) (quoting *In re Baycol Prods. Litig.*, No. 02-0200, 2007 U.S. Dist. LEXIS 51418, at *2 (D. Minn. July 13, 2007)). The guiding principle is who will best serve the interests of plaintiffs. *Millman ex rel. Friedman's, Inc. v. Brinkley*, No. 1:03-cv-58, 2004 U.S. Dist. LEXIS 20113, at *9 (N.D. Ga. Oct. 1, 2004); Fed. R. Civ. P. 23.1(a). Other factors include the quality of the pleadings, the economic interest of the plaintiffs, and the vigor with which the plaintiffs have prosecuted their lawsuits." *In re Centurylink Sales*

*Practices & Sec. Litig.*, 2019 U.S. Dist. LEXIS 68679, at \*8 (*quoting Freeman v. Musk*, 324 F.R.D. 73, 88 (D. Del. 2018) (internal citation omitted)).

Here, the first-filed complaint in the *McCollum* Action and the complaint in the *Murphy* Action are detailed, well-researched, and would survive a motion to dismiss.[6] *Browning v. Yahoo! Inc.*, Case No. C04- 401463, 2006 WL 3826714, at \*4 (N.D. Cal. Dec. 27, 2006) (appointing lead counsel, based on, among other things, substantial work done "identifying or investigating potential claims"); *White v. Med. Review Inst. of Am., LLC*, 2022 U.S. Dist. LEXIS 132016, \*9 (appointing as lead the plaintiff and attorneys that "were the first to file in this District" and finding "another factor weighing in favor" of their appointment "is that they have filed the majority of the pending Related Cases.").[7]

---

[6]      The Complaint in the *McCollum* Action is so strong that Plaintiff Kaur and his counsel copied it almost entirely. *See* Exhibits A and B. Even a cursory review of the introductions reveals the significant extent to which Kaur and his counsel plagiarized McCollum's first-filed complaint. Indeed, of the 12 allegations in the Kaur complaint's introduction, 10 are copied word for word from the introduction in the McCollum complaint. As shown in Exhibits A and B, this is illustrative of the entire Kaur complaint and Kaur's counsel's lazy approach thereto.

[7]      *See also Moradi v. Adelson*, 2011 WL 5025155, at \*3 (D. Nev. Oct. 20, 2011) (court finding "it would be appropriate" to appoint counsel from the first-filed action); *In re Oclaro, Inc. Derivative Litig.*, 2011 WL 4345099, at \*4 (N.D. Cal. Sept. 14, 2011) (appointing counsel who filed the first derivative action when actions were at similar, early procedural postures); *Biondi v. Scrushy*, 820 A.2d 1148, 1159 (Del. Ch. 2003), *aff'd sub nom. In re HealthSouth Corp. Shareholders Litig.*, 847 A.2d 1121 (Del. 2004) ("first-filed factor" is important when "consideration of other relevant factors does not tilt heavily in either direction"); *Easton v. Bailey*, 2013 WL 12323847, at \*1 (C.D. Cal. Jan. 4, 2013) (same); *Kramer v. Alterra Mt. Co.*, 2020 U.S. Dist. LEXIS 135770, 2020 WL 4429386, at \*2 (D. Colo. July 31, 2020) (appointing co-lead based in large part on their first-filed status).

Moving Plaintiffs have vested economic interests in this litigation by virtue of their ownership of Target stock at all relevant times,[8] and counsel for Moving Plaintiffs have demonstrated vigor in advancing these cases even at this early stage. In addition to conducting extensive investigations prior to filing their complaints, Moving Plaintiffs immediately secured waivers of service from Defendants and took the lead in organizing the Related Actions, including by drafting and filing this Motion. *See In re Oclaro, Inc.*, No. 11-3176, 2011 U.S. Dist. LEXIS 103967, 2011 WL 4345099, at *2 (N.D. Cal. Sept. 14, 2011) (favoring the law firm that (1) represented the plaintiff in the first-filed suit and (2) "appear[ed] to have taken the lead in relating and consolidating the [] derivative suits.").

Counsel for Moving Plaintiffs agreed to work together cooperatively for the benefit of Nominal Defendant Target, which courts have recognized is an "indication of their interest in vigorously pursuing the interest of those represented." *In re Foundry Networks Derivative Litig.*, 2007 U.S. Dist. LEXIS 13148, at *5 (N.D. Cal. Feb. 12, 2007); *see also Kubiak v. Barbas*, Case No. 11-cv-141, 2011 U.S. Dist. LEXIS 65903, at *9 (S.D. Ohio June 14, 2011) (noting an "essential attribute for Lead Counsel" is "to be inclusive" with competing plaintiffs and appointing as lead counsel the firms that "made the most concerted effort to be

---

[8]     McCollum has continuously owned stock since November 2017 and owns 88 shares. Murphy has continuously owned Target stock since August 2006 and owns 18 shares.

10

inclusive"); *Nicolow v. Hewlett Packard Co.*, 2013 U.S. Dist. LEXIS 29876, at *30 (N.D. Cal. Mar. 4, 2013) (appointing co-lead counsel that suggested "on multiple occasions to joint prosecution and a co-plaintiff leadership structure.").

Rigrodsky and L&K have earned reputations for excellence and success in stockholder derivative actions and other complex litigation, as is reflected in the firm resumes of Rigrodsky and L&K that have been submitted herewith as Exhibits C and D, respectively. The attorneys at both firms have strong backgrounds in derivative litigation as well as a demonstrated ability to successfully litigate substantive pretrial motions. The firms have the requisite knowledge of applicable substantive law and are well-suited to navigate the procedural challenges that arise in complex litigation.

Among Rigrodsky Law's many shareholder derivative litigation successes is *Mason-Mahon, et al. v. Flint, et al.*, Index No. 602052/2014 (New York Sup. Ct., Nassau Cnty.), a derivative action brought on behalf of HSBC Holdings PLC ("HSBC"), a foreign bank holding company. In that action, the plaintiffs alleged that HSBC's board of directors allowed the company to violate the anti-money laundering ("AML"), banking, and sanctions laws of the United States and the State of New York for more than a decade, by unlawfully processing billions in U.S. dollar transactions for narcotics traffickers and state sponsors of terrorism. Rigrodsky, as co-lead counsel, achieved a $72.5 million cash settlement on behalf

11

of HSBC after more than six years of litigation.  As part of the settlement, HSBC also agreed to "significant corporate governance enhancements ensure that the actions that gave rise to . . . [that] litigation do not reoccur."[9]  The $72.5 million cash component of the settlement is believed to be the first derivative cash settlement against a foreign corporation, as well as the thirteenth largest derivative cash settlement, in the United States.  In *PG&E San Bruno Fire Cases*, Case No. JCCP 4648-C (Cal. Super. Ct.), Rigrodsky initiated an action on behalf of the shareholders of PG&E Corporation ("PG&E") in connection with the tragic loss of life and property, and helped those shareholders recover $90 million for the company, then the seventh largest shareholder derivative settlement on record.

L&K was lead counsel in a derivative action captioned *Police & Ret. Sys. of the City of Detroit, et al. v. Greenberg, et al.*, C.A. No. 2019-0578-MTZ (Del. Ch.), which resulted in a settlement whereby Skechers Inc. cancelled approximately $20 million in equity awards issued to Skechers' founder. The firm was also Co-Lead Counsel in *In re Activision, Inc. S'holder Deriv. Litig.*, No. 06-cv-04771-MRP-JTL (C.D. Cal.), which resulted in the recovery of more than $24 million in excessive compensation and expenses, as well as the implementation of substantial improvements to corporate governance. Moving Plaintiffs' proposed Liaison

---

[9]    Transcript of October 19, 2020 Final Approval Hearing at 34:9-11, available upon request.

Counsel, Cook Law, is a Florida law firm with extensive experience in derivative litigation, including those that involve Delaware companies.

Rigrodsky, L&K, and Cook Law are committed to vigorously prosecuting the Related Actions to obtain the best result for Target, and they have demonstrated their commitment to the litigation by their cooperation thus far. Moving Plaintiffs have engaged in a sound litigation strategy that resulted in the filing of well-informed complaints and a demonstrated willingness to work cooperatively. Accordingly, Rigrodsky and L&K should be appointed Co-Lead Counsel and Cook Law as Liaison Counsel for Plaintiffs.

### c. The Parties Will Submit to the Court a Schedule for Further Proceedings

Once the Related Actions are consolidated, counsel for all parties will meet and confer and, within 14 days, submit to the Court a schedule regarding the designation of an operative consolidated complaint or the filing of an amended complaint in the consolidated action and Defendants' response thereto.

### V. CONCLUSION

In the interest of judicial economy and for the reasons set forth above, Moving Plaintiffs respectfully request that the Court enter an Order consolidating the Related Actions. Because Moving Plaintiffs have demonstrated that they will best serve Target and its shareholders by filing comprehensive complaints and acting to vigorously advance this litigation, they further submit that Rigrodsky

and L&K should be appointed as Co-Lead Counsel and Cook Law should be appointed as Liaison Counsel in the Related Actions.

Dated: January 30, 2025    Respectfully submitted,

          **COOK LAW, P.A.**

          */s/ William J. Cook*
          William J. Cook
          Florida Bar No. 986194
          610 East Zack Street, Suite 505
          Tampa, FL 33602
          (813) 489-1001
          wcook@cooklawfla.com

          *Counsel for Plaintiffs McCollum and Murphy*
          *and [Proposed] Liaison Counsel*

OF COUNSEL:

**RIGRODSKY LAW, P.A.**
Seth D. Rigrodsky
Timothy J. MacFall
Vincent A. Licata
825 East Gate Boulevard, Suite 300
Garden City, NY 11530
(516) 683-3516
sdr@rl-legal.com
tjm@rl-legal.com
vl@rl-legal.com

*Counsel for Plaintiff McCollum*
*and [Proposed] Co-Lead Counsel*

**LEVI & KORSINSKY, LLP**
Gregory M. Nespole
Daniel Tepper
Correy A. Suk

14

33 Whitehall Street, 17th Floor
New York, NY 10004
(212) 363-7500
gnespole@zlk.com
dtepper@zlk.com
csuk@zlk.com

*Counsel for Plaintiff Murphy*
*and [Proposed] Co-Lead Counsel*

## LOCAL RULE 3.01(g) CERTIFICATION

The undersigned hereby certifies that movants' counsel conferred with Defendants' counsel, Sandra Goldstein, by email on January 28, 2025, regarding the subject of this motion. Counsel for Defendants indicated that they take no position on consolidation of the Related Actions or appointment of co-lead counsel. The undersigned hereby certifies that movants' counsel conferred with counsel for plaintiff Kaur, Gregory Egleston, by telephone on January 24, January 29, and January 30, 2025, regarding the subject of this motion. Counsel for plaintiff Kaur indicated that he currently takes no position on consolidation of the Related Actions and opposes the requested appointment of co-lead counsel.

## CERTIFICATE OF SERVICE

I CERTIFY that a true and correct copy of the foregoing was furnished to all

counsel via filing with this Court's CM/ECF system on January 30, 2025.

*/s/ William J. Cook*
William J. Cook