**IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION**

| | |
|---|---|
| *In re Target Corp. Securities Class Action Litigation* | Case No. 2:25-cv-00135-JLB-KCD |
| *In re Target Corp. Shareholder Derivative Litigation* | Case No. 2:25-cv-00021-JLB-KCD |

**<u>DEFENDANTS' OMNIBUS MOTION TO TRANSFER</u>**

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................ 1

BACKGROUND ................................................................................................... 2

    A.    The Actions Began with the Filing of *Craig* as an Individual Action. ........................................................................................ 3

    B.    The *Craig* Plaintiffs Sought To Convert *Craig* into a Class Action and Their Counsel and Others Then Filed Nationwide Class Actions. ...................................................................................... 4

    C.    OSTRS Is the Presumptive Securities Class Action Lead Plaintiff. ....... 4

    D.    The Tag-Along Derivative Actions Assert Minnesota Law Claims on Behalf of Target, a Minnesota Corporation. ................................... 6

    E.    Another Shareholder Filed Claims in the District of Minnesota. .......... 7

    F.    The Conduct at Issue Occurred in Minnesota. ................................... 7

        1.    The Statements at Issue Were Prepared in Minnesota. ............. 7

        2.    Target Oversaw Risks of the 2023 Pride Collection in Minnesota. .................................................................... 8

    G.    The Key Non-Party Witnesses Live in Minnesota. ........................... 10

LEGAL STANDARD ........................................................................................ 11

ARGUMENT .................................................................................................... 13

I.    THE ACTIONS CAN BE TRANSFERRED TO MINNESOTA BECAUSE THEY COULD HAVE BEEN BROUGHT THERE. .............. 13

II.    THE ACTIONS MUST BE TRANSFERRED TO MINNESOTA. ............ 13

    A.    Plaintiffs' Choice of Forum Is Entitled to Little Deference ................. 13

    B.    Minnesota Is Far More Convenient for Key Non-Party Witnesses. ................................................................................ 15

        1.    Key Non-Party, Non-Employee Witnesses Reside in Minnesota. .................................................................. 16

        2.      Key Non-Party, Employee Witnesses Reside in Minnesota. ................................................................................ 17

        3.      Plaintiffs Don't Live Here and Their Conduct Is Not Key. ...... 18

   C.    Unwilling Witnesses Could Be Compelled To Testify in Minnesota, But Not in Florida. ........................................................ 18

   D.    The Conduct at Issue All Occurred in Minnesota. .............................. 19

   E.    Minnesota Is More Convenient for the Parties. ................................. 20

   F.    The District of Minnesota Is Better Situated To Decide the Minnesota Law Issues Relevant to the Derivative Action. ................. 22

   G.    Minnesota Has a Far Greater Interest than Florida in the Actions. ................................................................................................ 24

   H.    Trial Efficiency Favors Transfer. ..................................................... 24

   I.    The Remaining Factors Are Neutral. ................................................. 25

CONCLUSION ............................................................................................. 25

LOCAL RULE 3.01(G) CERTIFICATION ....................................................... 26

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*In re 3M Co.*,
2020 WL 13924735 (3d Cir. 2020)..................................................12, 15, 20, 24

*Abreu v. Pfizer*,
2022 WL 2355541 (S.D. Fla. June 22, 2022)..................................................... 21

*Aer Advisors v. Fidelity Brokerage Servs.*,
2017 WL 11318698 (S.D. Fla. Nov. 8, 2017) ..................................................... 17

*Am. Chems. & Equip. v. Principal Mgmt.*,
2014 WL 294481 (N.D. Ala. Jan. 24, 2014)...............................................14, 21

*Am. Dredging v. Miller*,
510 U.S. 443 (1994) .................................................................................22, 24

*In re Apple*,
602 F.3d 909 (8th Cir. 2010) ........................................................................ 15

*Bolton v. Tesoro Petroleum*,
549 F. Supp. 1312 (E.D. Pa. 1982) ................................................................. 12

*In re Choice Hotels Sec. Litig.*,
2008 WL 793621 (D. Colo. Mar. 24, 2008)..................................................... 14

*Clinton v. Sec. Benefit Life Ins.*,
2020 WL 6120565 (S.D. Fla. June 29, 2020)........................................ 18, 19, 24

*In re Connetics*,
2007 WL 1522614 (S.D.N.Y. May 23, 2007) ................................................... 15

*Craig v. Target Corp.*,
2024 WL 4981026 (M.D. Fla. Dec. 4, 2024)..............................................*passim*

*Delorenzo v. HP Enter. Servs.*,
79 F. Supp. 3d 1277 (M.D. Fla. Feb. 11, 2015) ............................................... 22

*Fairstein v. Netflix, Inc.*,
2020 WL 5701767 (M.D. Fla. Sept. 24, 2020)............................................*passim*

*Food Mktg. Consultants v. Sesame Workshop*,
2010 WL 1571206 (S.D. Fla. Mar. 26, 2010) ................................................ 22

*Frey v. Minter*,
829 F. App'x 432 (11th Cir. 2020) ................................................ 12

*In re Galectin Therapeutics Sec. Litig.*,
2015 WL 260881 (D. Nev. Jan. 21, 2015) ........................................ 13

*Garner v. Wolfinbarger*,
433 F.2d 117 (5th Cir. 1970) ........................................................ 14

*Gerring Props. v. Gerring*,
2017 WL 10662042 (Minn. Dist. Ct. Nov. 28, 2017) ........................ 23

*Goggins v. Alliance Cap. Mgmt.*,
279 F. Supp. 2d 228 (S.D.N.Y. 2003) .............................................. 13

*Gould v. Nat'l Life Ins. Co.*,
990 F. Supp. 1354 (M.D. Ala. 1998) .......................................... 16, 19

*Grail Semiconductor. v. Stern*,
2013 WL 2243961 (S.D. Fla. May 21, 2013) ........................... 21, 23, 24

*In re Hanger Orthopedic Grp. Sec. Litig.*,
418 F. Supp. 2d 164 ...................................................................... 17

*Harper v. Am. Airlines*,
2009 WL 1605800 (N.D. Ala. May 18, 2009) .................................. 14

*Huellemeier v. Teva Pharms. Indus.*,
2017 WL 5523149 (S.D. Ohio Nov. 17, 2017) ................................ 22

*Huntley v. Chi. Bd. of Options Exch.*,
132 F. Supp. 3d 1370 (N.D. Ga. 2015) .................................... *passim*

*Irwin v. Zila*,
168 F. Supp. 2d 1294 (M.D. Ala. 2001) .......................................... 24

*Job Haines Home for the Aged v. Young*,
936 F. Supp. 223 (D.N.J. 1996) .................................................... 14

*Kadel v. Flood*,
2008 WL 11319455 (S.D. Fla. Apr. 4, 2008) .............................. 14, 24

*Kang Haggerty & Fetbrot v. Hayes*,
  2017 WL 9938022 (M.D. Fla. Mar. 22, 2017) .................................................. 24

*Koster v. Am. Lumbermens Mut. Cas. Co.*,
  330 U.S. 518 (1947) ....................................................................1, 14, 15, 18

*La. Mun. Police Emps. Ret. Sys. v. Finkelstein*,
  2012 WL 10057353 (Minn. Dist. Ct. May 29, 2012) ........................................ 23

*Lewis v. C.R.I.*,
  2003 WL 1900859 (S.D.N.Y. Apr. 17, 2003) ................................................... 14

*In re Mannatech Sec. Litig.*,
  2007 WL 9717517 (D.N.M. Jan. 29, 2007) ...................................................... 18

*Maxon v. Sentry Life Ins.*,
  2018 WL 3850011 (M.D. Fla. Apr. 11, 2018) .................................14, 16, 21, 25

*McIlvaine v. Arthrocare*,
  2008 WL 11332000 (S.D. Fla. Oct. 28, 2008) ............................................. 14, 20

*In re Medtronic Deriv. Litig.*,
  68 F. Supp. 3d 1054 (D. Minn. 2014) ............................................................. 23

*Mitchell v. Edwards*,
  2009 WL 10667876 (M.D. Fla. Aug. 21, 2009) ................................................ 11

*Mukamal v. Bakes*,
  378 F. App'x 890 (11th Cir. 2010) ................................................................. 23

*Nat'l Tr. Ins. v. Pa. Nat'l Mut. Cas. Ins. Co.*,
  223 F. Supp. 3d 1236 (M.D. Fla. 2016) .......................................................... 19

*In re Nematron Sec. Litig.*,
  30 F. Supp. 2d 397 (S.D.N.Y. 1998) .............................................................. 17

*Passmore v. Vertex Energy*,
  2024 WL 266531 (S.D. Ala. Jan. 24, 2024) ................................................. 14, 21

*Pemberton ex rel. Patterson Cos. v. Anderson*,
  412 F. Supp. 3d 1058 (D. Minn. 2019) ........................................................... 23

*Penny v. AT&T*,
  2015 WL 12828116 (S.D. Fla. Apr. 6, 2015) ................................................... 24

vi

*In re Principal U.S. Prop. Account Litig.*,
   2010 WL 1645042 (S.D.N.Y. Apr. 22, 2010) .................................................. 25

*Ravenwoods Inv. v. Bishop Cap.*,
   2005 WL 236440 (S.D.N.Y. Feb. 1, 2005) ................................................. 12, 20

*Ret. Sys. v. Wal-Mart Stores*,
   2012 WL 12543462 (M.D. Tenn. July 25, 2012) ......................................... 12, 18

*Ross v. Bernhard*,
   396 U.S. 531 (1970) ............................................................................................ 18

*Roy v. Alliance Cap. Mgmt.*,
   2002 WL 32657085 (M.D. Fla. Mar. 13, 2002) ........................................... 14, 21

*Sanchez v. Centene*,
   2017 WL 11496768 (C.D. Cal. Mar. 1, 2017) ................................................... 15

*Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*,
   549 U.S. 422 (2007) ............................................................................................ 15

*In re TikTok*,
   85 F.4th 352 (5th Cir. 2023) .......................................................................... 12, 13

*Toomey v. Ripple Labs*,
   2021 WL 12306727 (M.D. Fla. Aug. 20, 2021) ................................................. 21

*Umbriac v. Am. Snacks.*,
   388 F. Supp. 265 (E.D. Pa. 1975) .................................................................... 2, 15

*In re Volkswagen of Am.*,
   545 F.3d 304 (5th Cir. 2008) ......................................................................... 12, 13

*Ward v. El Rancho Manana*,
   945 N.W.2d 439 (Minn. Ct. App. 2020) ............................................................ 18

*Wayne Cty. Emps. Retirement Sys. v. MGIC Inv.*,
   604 F. Supp. 2d 969 (E.D. Mich. 2009) ......................................................... 14, 17

*Whitten v. Clarke*,
   41 F.4th 1340 (11th Cir. 2022) .......................................................................... 23

*In re Yahoo!*,
   2008 WL 707405 (C.D. Cal. Mar. 10, 2008) .................................................. 14, 15

*Yes Lighting v. PSG Energy Grp.*,
  2019 WL 13225114 (S.D. Fla. Sept. 19, 2019) ................................................... 19

**Statutes**

15 U.S.C. §78aa ...................................................................................................... 13

15 U.S.C. §78u-4(a)(3)(B)(iii)(I) ............................................................................. 5

28 U.S.C. §1391(b) ................................................................................................. 13

28 U.S.C. §1404(a) ............................................................................................. 1, 11

Minn. Stat. §302A.251(5) ....................................................................................... 24

**TABLE OF ABBREVIATIONS**

| Abbreviation | Meaning |
|---|---|
| Actions | The Securities Class Action and the Derivative Action. |
| *Craig* | The individual securities action captioned *Craig v. Target Corp., et al.*, No. 2:23-cv-00599 (M.D. Fla.) (consolidated into the Securities Class Action). |
| *Craig* AC | The amended complaint filed in *Craig* (ECF 52). |
| *Craig* Tr. | The transcript from the motion to dismiss oral argument held in *Craig* on May 22, 2024 |
| Decl. | The Declaration of Erin Rath Moos dated July 25, 2025, filed on August 1, 2025. |
| Derivative Action | The derivative action captioned *In re Target Corp. Shareholder Derivative Litig.*, No. 2:25-cv-00021-JLB-KCD (M.D. Fla.), which consolidated *McCollum*, *Kaur*, and *Murphy*. |
| Deriv. AC | The amended complaint filed in the Derivative Action (ECF 49). |
| Defendants | Target and the Individual Defendants. |
| *FSBA* | The putative securities class action filed by FSBA captioned *State Bd. of Admin. of Fla. v. Target Corp., et al.*, No. 2:25-cv-00135 (M.D. Fla.) (consolidated into the Securities Class Action). |
| *FSBA* Compl. | The complaint filed in *FSBA* (ECF 1). |
| Individual Defendants | Brian C. Cornell, David P. Abney, Douglas M. Baker, Jr., George S. Barrett, Gail K. Boudreaux, Robert L. Edwards, Melanie L. Healey, Donald R. Knauss, Christine A. Leahy, Monica C. Lozano, Grace Puma, Derica W. Rice, Dmitri L. Stockton, Mary E. Minnick and Michael J. Fiddelke. |

| Abbreviation | Meaning |
|---|---|
| *Kaur* | The derivative action filed by plaintiff Chamandeep Kaur captioned *Kaur v. Cornell, et al.*, No. 2:25-cv-00043-JLB-KCD (M.D. Fla.) (consolidated into the Derivative Action). |
| *Murphy* | The derivative action filed by plaintiff Ryan Murphy captioned *Murphy v. Cornell, et al.*, No. 2:25-cv-00062-JLB-KCD (M.D. Fla.) (consolidated into the Derivative Action). |
| PSLRA | Private Securities Litigation Reform Act of 1995. |
| *Ranacis* | The derivative action captioned *Ranacis v. Cornell, et al.*, No. 0:25-cv-02743-NEB-SGE (D. Minn.). |
| *Riviera* | The putative securities class action filed by the City of Riviera Beach Police Pension Fund captioned *City of Riviera Beach Police Pension Fund v. Target Corp., et al.*, No. 2:25-cv-00085 (M.D. Fla.) (consolidated into the Securities Class Action). |
| *Riviera* Compl. | The complaint filed in *Riviera* (ECF 1). |
| Securities Class Action | The securities action captioned *In re Target Corp. Securities Class Action Litigation*, No. 2:25-cv-00135 (M.D. Fla.), which consolidated *Riviera*, *FSBA*, and *Craig*. |
| Target | Target Corporation. |
| *Target Deriv.* | The docket of the consolidated Derivative Action captioned *In re Target Corp. Shareholder Derivative Litig.*, No. 2:25-cv-00021-JLB-KCD (M.D. Fla.) (formerly the *McCollum* docket). |
| *Target Sec.* | The docket of the consolidated Securities Class Action captioned *In re Target Corp. Securities Class Action Litigation*, No. 2:25-cv-00135 (M.D. Fla.) (formerly the *FSBA* docket). |

Defendants respectfully move to transfer the Actions to the United States District Court for the District of Minnesota pursuant to 28 U.S.C. §1404(a).

## PRELIMINARY STATEMENT[1]

In representative actions—such as class and derivative actions—a plaintiffs' choice of forum receives little, if any, weight. *Koster v. Am. Lumbermens Mut. Cas. Co.*, 330 U.S. 518, 524 (1947). That's because a representative plaintiff is a "mere phantom . . . with interest enough to enable him to institute the action and little more." *Id.* at 525. Thus, courts across the country routinely transfer representative actions to the forum in which they can most conveniently be litigated without regard for where they were originally filed. Here, the most convenient forum is Minnesota.

As the Court knows, Defendants previously moved to transfer *Craig* to the District of Minnesota, which the Court denied. In declining to transfer *Craig*, the Court "heavily weighed" plaintiffs' choice of forum and found that the *Craig* plaintiffs' modest means weighed against moving *Craig* from the plaintiffs' selected forum. The Court also noted that it was unclear whether Minnesota was the locus of operative facts or the most convenient forum for witnesses, particularly non-party witnesses.

But when it comes to transfer, even "small facts of the case can change a result quite easily." *Craig* Tr. 6:7-8. This case is now transformed. Plaintiffs assert representative actions—nationwide securities class actions and tag-along derivative actions purportedly on behalf of Target—so their choice to litigate here is entitled to

---

[1] Unless otherwise noted, all emphases are added, and all internal quotations are omitted.

minimal deference.  The transfer factors now overwhelmingly lead to Minnesota.  The lead plaintiff in the Derivative Action and presumptive lead plaintiff in the Securities Class Action are comfortable litigating in Minnesota and, in fact, have chosen to do so in past cases. And their attorneys have extensive experience litigating in the District of Minnesota too.  Defendants have also come forward with a sworn declaration proving that the conduct at issue occurred in Minnesota and that key witnesses— including non-employee witnesses whose absence at trial would prejudice Defendants—live there.  Plus, the Derivative Action turns on issues of Minnesota law that the District of Minnesota is already considering (in a near-identical action) and is best situated to decide.  *Infra* II.F

It is rare to convert an individual action to a class action after denial of a transfer motion.  But in the one case Defendants have found, the transfer motion was granted, as the court held it "must give considerably less weight to plaintiffs' choice of forum [in the class action] than was accorded in the individual action."  *Umbriac v. Am. Snacks*, 388 F. Supp. 265, 271 (E.D. Pa. 1975).  Transfer is even more warranted here because, unlike *Umbriac*, Defendants offer significant new proof, and the Derivative Action raises issues of Minnesota law.  Thus, the factors "now tip[] the balance of convenience and justice away from [Florida] and in favor of [Minnesota]." *Id.* at 267.

## BACKGROUND

The Actions consist of a putative nationwide securities class action and derivative action premised on allegations that Defendants misled investors (or Target) about the risk of Target's 2023 Pride Collections and oversight of that risk.

### A.    The Actions Began with the Filing of *Craig* as an Individual Action.

In August 2023, Brian Craig filed an ***individual*** action alleging violations of the federal securities laws.  That action—*Craig*—was later amended to add claims on behalf of four more ***individuals***, each of whom, in their own words, held "relatively small amounts of Target stock."  *Craig*, ECF 83 at 17-18; *Craig* AC ¶¶31-35.  *Craig* alleges that certain statements in Target's 2021 and 2022 annual reports ("Annual Reports") and 2022 and 2023 Proxy Statements ("Proxies") misled investors.  *Id.* ¶4.

Defendants moved to transfer *Craig* to the District of Minnesota.  *Craig*, ECF 68. The plaintiffs opposed transfer, arguing that their "choice of forum is entitled to ***extraordinary*** weight" because of their "strong Florida ties."  *Craig*, ECF 83 at 5-6. They speculated that Target's hybrid work policy meant that Target used a "widely diffused geographic scope of corporate policymaking" and that key witnesses—Target corporate employees—might live anywhere (rather than near Target's Minnesota headquarters), meaning the alleged conduct could have happened outside Minnesota. *Id.* at 15.  And the plaintiffs asked the Court to consider their limited means and small stock holdings as weighing against transfer.  *Id.* at 17-18.

The Court "heavily weighed" the individual plaintiffs' choice of forum and denied transfer.  *Craig*, 2024 WL 4981026, at *6 (M.D. Fla. Dec. 4, 2024).  The Court found that transfer would impose "heavy burdens" on the individual plaintiffs, who had limited means and were pursuing low-value claims.  *Id.* at *4.  That is no longer the case.  *Infra* II.E.  The Court also found that it was "unclear whether the alleged conduct actually occurred in Minnesota" and whether key witnesses live in Minnesota,

3

presumably accepting the plaintiffs' arguments regarding Target's hybrid work policy. *Craig*, 2024 WL 4981026, at *3, 5. The evidence submitted with this motion, however, proves that the conduct occurred in Minnesota and the key witnesses live there. *Infra* F-G, II.B, II.D.

**B.** **The *Craig* Plaintiffs Sought To Convert *Craig* into a Class Action and Their Counsel and Others Then Filed Nationwide Class Actions.**

Following the Court's decision, the *Craig* plaintiffs sought leave to file a motion for leave to amend their complaint to add class allegations. *Craig*, ECF 113. The Court invited them to file that motion, *Craig*, ECF 115, but the *Craig* plaintiffs never did. Instead, their counsel filed a nationwide securities class action, *FSBA*, on behalf of another shareholder, Florida State Board of Administration ("FSBA"). Another nationwide securities class action—*Riviera*—was also filed following the denial of transfer in *Craig*. Counsel for the *Craig* plaintiffs moved to consolidate *Craig* with *FSBA* and *Riviera*, *Riviera*, ECF 41,[2] which the Court granted, *id.*, ECF 72. Thus, the Court should consider the *Craig* plaintiffs' interests to be no different from those of other putative class members for purposes of its transfer analysis.

**C.** **OSTRS Is the Presumptive Securities Class Action Lead Plaintiff.**

On April 1, 2025, FSBA and another shareholder, State Teachers Retirement System of Ohio ("OSTRS"), filed motions seeking appointment as lead plaintiff and lead counsel. On July 24, 2025, the Court directed OSTRS and FSBA to re-file their

---

[2] Brian Craig filed a declaration in support of consolidation, identifying himself as "a member of the putative class," *Riviera*, ECF 47-2 ¶1, and the *Craig* plaintiffs filed a notice stating they did not oppose consolidation, *Craig*, ECF 129.

motions by August 7, 2025. *Riviera*, ECF 72. Pursuant to the PSLRA, OSTRS is the presumptive lead plaintiff because it "has the largest financial interest in the relief sought" and "otherwise satisfies the requirements of Rule 23." 15 U.S.C. §78u-4(a)(3)(B)(iii)(I); *Riviera*, ECF 42 at 9-14. Grant & Eisenhofer ("G&E"), selected by OSTRS, is the presumptive lead counsel. *Riviera*, ECF 42 at 14-15.[3]

OSTRS, which is "one of the largest public pension funds in the United States,"[4] has significant resources to prosecute the Securities Class Action. OSTRS is "based in Ohio" and "manages more than $95 billion in assets," *Riviera*, ECF 42 at 14. That's well over twice Target's approximately $45 billion in market capitalization.[5] OSTRS also has experience litigating in the District of Minnesota. *See* App'x A at 7-8.[6]

G&E is a national law firm with offices in Delaware, New York, Chicago, Baltimore, and San Francisco. *Riviera*, ECF 43-4 at 1. The G&E attorneys representing OSTRS and the putative class are based in New York. *Riviera*, ECF 42 at 16. Like OSTRS, G&E has significant resources, having secured many multi-million-dollar settlements. *Riviera*, ECF 43-4 at 1. G&E has litigated securities class actions "in courts and other forums across the country and throughout the world," *id.*

---

[3] FSBA selected Boyden Gray, America First Legal, Lawson Huck Gonzalez—all counsel in the *Craig* action—along with the Attorney General of Florida as its counsel. *Riviera*, ECF 41 at 10-11.

[4] OSTRS at a Glance, https://www.strsoh.org/about/strs-ohio-at-a-glance.html (visited Aug. 1, 2025).

[5] Target Market Cap., https://companiesmarketcap.com/target/marketcap/ (visited Aug. 1, 2025).

[6] FSBA, likewise, has significant resources to prosecute the Securities Class Action. It is "responsible for investing the proceeds of the Florida Retirement System Pension Plan," *Target Sec.*, ECF 1 ¶32, and has over $200 billion in assets under management. FSBA, Investment Management Services, https://www.sbafla.com/partners/investment-management-services/ (visited Aug. 1, 2025). FSBA also has experience litigating in the District of Minnesota. *See* App'x A at 8.

at 2, including over a dozen cases in the District of Minnesota, *see* App'x A at 1-2.[7]

> **D.    The Tag-Along Derivative Actions Assert Minnesota Law Claims on Behalf of Target, a Minnesota Corporation.**

Following the denial of the *Craig* transfer motion, plaintiffs' lawyers filed three tag-along derivative actions. The Court consolidated those actions, *Target Deriv.*, ECF 48, and on July 30, 2025, the plaintiffs filed an amended complaint, *id.*, ECF 49. The Derivative Action is purportedly on behalf of Target, a Minnesota corporation, and alleges that the Individual Defendants defrauded Target (not shareholders), based on the same alleged misstatements as in the Securities Class Action. Deriv. AC ¶¶85-118, 222-245. The Derivative Action also asserts a slew of Minnesota state law claims. *Id.* ¶¶246-268. Plaintiffs did not make a demand on Target's Board prior to filing the Derivative Action; instead, they pled that they are excused from making a demand, *id.* ¶¶192-97, an issue also governed by Minnesota law, *infra* II.F.

In consolidating the Derivative Action, the Court appointed Portia McCollum and Ryan Murphy as co-lead plaintiffs, and assigned Rigrodsky Law, P.A. ("Rigrodsky") and Levi & Korsinsky, LLP ("L&K") as lead counsel. *Target Deriv.*, ECF 48. McCollum is a citizen of Virginia, *id.*, ECF 1 ¶24, who also has experience litigating in the District of Minnesota, *see* App'x A at 9. Murphy does not identify his residence, but it is not Florida.[8] Both Rigrodsky and L&K are based out of New York

---

[7] FSBA's counsel, likewise, has significant resources and a national presence. *Riviera*, ECF 41 at 10-11. Boyden Gray, FSBA's selected lead counsel, also has experience litigating in the District of Minnesota. *See* App'x A at 3.

[8] Murphy's signature on his Verification states he signed in the Mountain Time Zone, which means the closest state to Florida he could have been in was New Mexico. *Murphy*, ECF 1-1. Chamandeep Kaur is a named plaintiff, Deriv. AC ¶23, and is a resident of New York. *Kaur*, ECF 1 ¶18.

and maintain national practices. *Target Deriv.*, ECF 29-3 at 1, 29-4 at 3. Both firms have significant resources, have won "hundreds of millions of dollars" in prior disputes, and, as L&K admits, are "able to allocate substantial resources to each case." *Id.*, ECF 29 at 11-12; ECF 29-3, ECF 29-4 at 3. Both firms also regularly litigate in the District of Minnesota. *See* App'x A at 4-6.

**E.    Another Shareholder Filed Claims in the District of Minnesota.**

During the pendency of the motions to consolidate and appoint lead plaintiffs, another shareholder filed a derivative action in the United States District Court for the District of Minnesota. *Ranacis*, ECF 1. The *Ranacis* complaint asserts substantially similar claims as the Derivative Action. Defendants moved to dismiss the *Ranacis* complaint on July 17, 2025, arguing, among other things, that the *Ranacis* plaintiff failed to plead demand futility under Minnesota law. *Id.*, ECF 35 at 4-7. Oral argument on the motion to dismiss is scheduled for October 8, 2025. *Id.*, ECF 44.

**F.    The Conduct at Issue Occurred in Minnesota.**

The conduct at the core of all the Actions is (1) Target's issuance of challenged statements from the Annual Reports and Proxies, and (2) Target's oversight of risk related to the 2023 Pride Collection. *See FSBA* Compl. ¶¶4-5; Deriv. AC ¶¶14-16.

1.    <u>The Statements at Issue Were Prepared in Minnesota.</u>

The statements at issue in the Annual Reports and Proxies were prepared by a cross-functional group of Target employees. Decl. ¶45. The key teams involved in drafting the statements were all based out of Target's corporate headquarters in

Minneapolis, Minnesota ("Target HQ"). *Id.* ¶¶41-45.[9] These teams also regularly met in person at Target HQ. *Id.* ¶45.[10] The Annual Reports and Proxies were also reviewed by Ernst & Young US LLP ("EY"), Target's independent auditor, out of EY's Minneapolis office. *Id.* ¶46.

      2.    <u>Target Oversaw Risks of the 2023 Pride Collection in Minnesota.</u>

**Management Oversight**. Target faces a multitude of risks every day, including product safety, security, and reputational risks. Decl. ¶¶9-10. Target assigns oversight of risk to groups based in Minnesota. *Id.* ¶9. The Risk and Reputation Team (the "Reputation Team") oversees reputational risks, including risks related to Target's history and heritage month collections, such as the Pride collections. *Id.* ¶¶11-12. The Reputation Team reviews each collection to identify products or messaging that may cause backlash from individuals across the social and political spectrum. *Id.* ¶12.

The Reputation Team reports out to subject matter expert groups and leadership teams, which provide further oversight and make strategic risk-management decisions. Decl. ¶9. Specifically, Target has a steering committee that reviews all history and heritage collections to assess backlash risk (the "Steering Committee"). *Id.* ¶¶12, 15-16. Target also has a task force of senior executives who oversee major risk responses and make strategic decisions about managing reputational risk (the "Task Force"). *Id.* ¶¶18-19. When appropriate, the Task Force will elevate issues to the full set of Target's

---

[9] Target and Cornell's challenged statements on May 24, 2023 announcing adjustments to the 2023 Pride Collection were also prepared and disseminated from Target HQ. Decl. ¶¶38-39.

[10] The scripts and materials for Target's annual shareholder meetings and earnings calls were also prepared by the same teams in Minnesota. Decl. ¶¶42, 45.

senior executive officers (the "Leadership Team") or the Board. *Id.* ¶18. Risk management decisions made by both the Steering Committee and Task Force are implemented by another team at Target (the "Execution Team"). *Id.* ¶21. Since their inception, the Reputation Team, Steering Committee, Task Force, and Execution Team have all been based out of Target HQ. *Id.* ¶¶14, 17, 20, 22.

**2023 Pride Collection**. These teams collectively oversaw risks related to the 2023 Pride Collection. For example, the Reputation Team coordinated reviews of the Collection both before and after its release. Decl. ¶¶28, 30-31, 33, 35-36. The Steering Committee conducted an item-by-item review of the 2023 Pride Collection in April 2023 and again after its release and made risk-reduction recommendations to the Task Force. *Id.* ¶¶29-31, 37. The Task Force made decisions intended to reduce risks related to the 2023 Pride Collection before its release, and managed and responded to the backlash against the Collection. *Id.* ¶¶31, 36, 38. And the Execution Team coordinated adjustments to the Collection both before and after its release. *Id.* ¶¶31, 36, 39. All these tasks were performed in Minnesota. *Id.* ¶¶28-40.

**Board Oversight**. In addition, Target's Board and its committees oversaw (and oversee) Target's management of enterprise risks, including social and political risks related to Target's ESG and DEI initiatives. Decl. ¶¶32, 40. For example, the Audit & Risk Committee oversees Target's enterprise risk management programs and regularly receives updates from executives regarding the risk landscape. *Id.* ¶23. The Governance & Sustainability Committee oversees various social and political risks not

9

allocated to other committees. *Id.* ¶24. And the Committees report to the full Board, which oversees all enterprise risks and seeks to ensure Target's leadership has processes in place to appropriately manage them. *Id.* ¶25.

The Board and its committees regularly meet in person in Minnesota or virtually. Decl. ¶26. Teams based in Target HQ create/distribute materials for each meeting and host virtual meetings from conference rooms in Target HQ. *Id.*

### G.    The Key Non-Party Witnesses Live in Minnesota.[11]

The key witnesses in the Actions are people who can testify about the preparation of the statements at issue and/or Target's oversight of risks related to the 2023 Pride Collection. Several of them are former Target employees who are not parties to the action, including:

- **John Mulligan, Former Chief Operating Officer**, was a standing member of the Task Force. Mulligan was involved in risk-assessment reviews of the Collection, made risk-management decisions about it, and managed operational adjustments in response to the backlash. Mulligan retired in February 2025 and lives in Minnesota. Decl. ¶¶19, 38, 51.

- **Christina Hennington, Former Chief Growth Officer**, was a standing member of the Task Force and Steering Committee. Hennington was responsible for reviewing and directing merchandising strategy and conducted an item-by-item review of the 2023 Pride Collection. Hennington is currently serving as a strategic advisor to Target until September 2025 and lives in Minnesota. *Id.* ¶¶15, 19, 37, 38, 51.

- **Mark Schindele, Former Chief Stores Officer**, was added to the Task Force in 2023 to help respond to store disruptions caused by the backlash to the Collection. Schindele made key decisions about in-store adjustments that promoted safety. Schindele retired from Target in February 2025 and lives in Minnesota. *Id.* ¶¶35, 38, 51.

---

[11] Every Target employee has an assigned work location. Decl. ¶47. Target has a hybrid work policy that allows employees to work from home periodically or, on occasion, full time. *Id.* ¶¶47-48. To work remotely full time, an employee must designate their home office location and must work from that state. *Id.* ¶48. All other employees may work from home on occasion but must live within commuting distance of their assigned work location and attend work-related meetings and other events in person. *Id.* ¶47. All the key witnesses lived (and continue to live) in Minnesota and each of them were assigned to work at Target's headquarters in Minnesota. *Id.* ¶¶50-51. To the extent any of the key witnesses worked remotely, they did so from their homes in Minnesota. *Id.*

10

Other key non-party witnesses still work at Target and reside in Minnesota, including:

- **Katie Boylan, Chief Corporate Affairs Officer**, was (and is) a member of the Task Force and was (and is) also responsible for reviewing and approving Target's public filings and statements, including the statements at issue. *Id.* ¶¶19, 38, 44, 50-51.

- **Jill Sando, Chief Merchandising Officer**, was (and is) a member of the Steering Committee and conducted an item-by-item review of the 2023 Pride Collection. *Id.* ¶¶15, 37, 50-51.

- **Erin Rath Moos, VP, Reputation Strategy & Intelligence**, led the Reputation Team and ran Task Force, Steering Committee, and Execution Team meetings related to the 2023 Pride Collection. She also reviewed the Annual Reports and Proxies at issue and regularly provides updates to the Board and Audit & Risk Committee regarding enterprise risks, including reputational, social, and political risks. *Id.* ¶¶10-12, 16, 20, 22-23, 25, 43, 50-51.

- **Mark Krause, VP, Global Corporate Security & Crisis Management**, was (and is) a member of the Execution Team, regularly attended Task Force meetings in 2023, and was responsible for Target's security strategy with respect to the Collection backlash. *Id.* ¶¶22, 35, 39, 50-51.

- **Kayla Castañeda, Senior Director, Corporate Affairs & Communications**, was (and is) a member of the Execution Team, regularly attended Task Force meetings in 2023, and was part of the team that drafted the May 24 statements regarding backlash. *Id.* ¶¶13, 22, 39, 50-51.

- **Sarah Bakken, Director, Strategy & Operations**, was Director of the Reputation Team in 2023. She assisted Rath in the Reputation Team's oversight of 2023 Pride Collection risk and in running related Task Force, Steering Committee, and Execution Team meetings. *Id.* ¶¶13, 22, 28, 36, 39, 50-51.

## LEGAL STANDARD

Transfer under Section 1404(a) involves a two-part analysis. *First*, the court determines if the action could have been brought in the transferee forum. *Mitchell v. Edwards*, 2009 WL 10667876, at *1 (M.D. Fla. Aug. 21, 2009). *Second*, the court assesses whether convenience and the interests of justice require transfer. *Id.* In this second step, courts examine nine factors:

> (1) the convenience of the witnesses; (2) the location of relevant documents and the relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) a forum's familiarity with the governing law; (8) the weight accorded a plaintiff's

11

> choice of forum; and (9) trial efficiency and the interests of justice, based on the totality of the circumstances.

*Frey v. Minter*, 829 F. App'x 432, 436 (11th Cir. 2020). Where the only connection to a forum is the plaintiff's choice to file suit there and "not a single factor weighs in favor of refusing transfer," transfer is required. *In re TikTok*, 85 F.4th 352, 366 (5th Cir. 2023); *see also In re Volkswagen of Am.*, 545 F.3d 304, 314-15, 318 (5th Cir. 2008) (district court erred by giving "inordinate weight" to plaintiffs' venue choice and "glossing over the fact that not a single relevant factor favor[ed] the [plaintiff's] chosen venue").

In securities and derivative actions, courts routinely transfer cases from districts "whose only connection with the litigation was the residence of one or several plaintiffs, to the district containing the corporation's home office." *Bolton v. Tesoro Petroleum*, 549 F. Supp. 1312, 1316 (E.D. Pa. 1982). That's because "[c]laims based on false statements or omissions arise in the district where they occurred." *In re 3M Co.*, 2020 WL 13924735, at *3 (3d Cir. 2020) (district court erred by denying transfer to location from which the challenged statements were made); *see also Huntley v. Chi. Bd. of Options Exch.*, 132 F. Supp. 3d 1370, 1374 (N.D. Ga. 2015) (transferring to venue where statements were made); *Ravenwoods Inv. v. Bishop Cap.*, 2005 WL 236440, at *5, 6 (S.D.N.Y. Feb. 1, 2005) (same); *Frey*, 829 F. App'x at 436 (affirming transfer of defamation action to venue where statements were made). And courts frequently transfer derivative and securities actions so they can be adjudicated together in the most convenient forum. *See Bolton*, 549 F. Supp. at 1313, 1317; *City of Pontiac Gen. Empls.' Ret. Sys. v. Wal-Mart Stores*, 2012 WL 12543462, at *2 (M.D. Tenn. July 25,

2012); *In re Galectin Therapeutics Sec. Litig.*, 2015 WL 260881, at *7 (D. Nev. Jan. 21, 2015); *Goggins v. Alliance Cap. Mgmt.*, 279 F. Supp. 2d 228, 234-35 (S.D.N.Y. 2003).

## ARGUMENT

### I. THE ACTIONS CAN BE TRANSFERRED TO MINNESOTA BECAUSE THEY COULD HAVE BEEN BROUGHT THERE.

Transfer to the District of Minnesota is permitted because these actions "might have been brought" in Minnesota. *Fairstein v. Netflix, Inc.*, 2020 WL 5701767, at *6 (M.D. Fla. Sept. 24, 2020). Venue would be proper in the District of Minnesota because a shareholder can sue in any district "wherein the defendant is found or is an inhabitant or transacts business." 15 U.S.C. §78aa. Target is a Minnesota corporation headquartered in Minneapolis and all Individual Defendants transact business in Minnesota as Target directors or officers. *FSBA* Compl. ¶¶35-48. Venue would also be proper pursuant to 28 U.S.C. §1391(b).

### II. THE ACTIONS MUST BE TRANSFERRED TO MINNESOTA.

All the transfer factors support transfer or are neutral. Because the factors "weigh in favor of transfer," the Actions should be transferred to the District of Minnesota. *See Fairstein*, 2020 WL 5701767, at *5. Indeed, transfer here is ***required***, not discretionary, because "not a single relevant factor favors the [plaintiff's] chosen venue." *Volkswagen*, 545 F.3d at 318; *accord Tiktok*, 85 F.4th at 366.

#### A. Plaintiffs' Choice of Forum Is Entitled to Little Deference.

Although a plaintiff's choice of forum in an individual action generally receives considerable deference, in representative actions—like the ones at issue here—a

13

plaintiff's choice of forum is "considerably weakened." *Koster*, 330 U.S. at 524, 526. That's because in a representative action, "there are hundreds of potential plaintiffs . . . all of whom could with equal show of right go into their many home courts," so individual preferences do not matter. *Id.* at 524. As a result, courts give little to no weight to a plaintiff's choice of forum in derivative and class actions. *See, e.g.*, *Maxon v. Sentry Life Ins.*, 2018 WL 3850011, at *4 (M.D. Fla. Apr. 11, 2018); *Am. Chems. & Equip. v. Principal Mgmt.*, 2014 WL 294481, at *2 (N.D. Ala. Jan. 24, 2014); *Roy v. Alliance Cap. Mgmt.*, 2002 WL 32657085, at *3 (M.D. Fla. Mar. 13, 2002); *Harper v. Am. Airlines*, 2009 WL 1605800, at *3 (N.D. Ala. May 18, 2009).

Applying those rules, courts in the Eleventh Circuit (and nationwide) routinely transfer derivative and securities class actions to the defendant company's headquarters, giving little weight to the plaintiff's forum choice. *See, e.g.*, *Garner v. Wolfinbarger*, 433 F.2d 117, 119 (5th Cir. 1970) (affirming transfer and holding that a plaintiff's forum choice in a securities action is **not** controlling); *McIlvaine v. Arthrocare*, 2008 WL 11332000, at *1-3 (S.D. Fla. Oct. 28, 2008); *Kadel v. Flood*, 2008 WL 11319455, at *3 (S.D. Fla. Apr. 4, 2008); *Passmore v. Vertex Energy*, 2024 WL 266531, at *5 (S.D. Ala. Jan. 24, 2024); *Huntley*, 132 F. Supp. 3d at 1374; *Lewis v. C.R.I.*, 2003 WL 1900859 (S.D.N.Y. Apr. 17, 2003); *Job Haines Home for the Aged v. Young*, 936 F. Supp. 223 (D.N.J. 1996); *Wayne Cty. Emps. Retirement Sys. v. MGIC Inv.*, 604 F. Supp. 2d 969 (E.D. Mich. 2009); *In re Yahoo!*, 2008 WL 707405 (C.D. Cal. Mar. 10, 2008); *In re Choice Hotels Sec. Litig.*, 2008 WL 793621 (D. Colo. Mar. 24, 2008).

14

The Court's transfer decision in *Craig*, in contrast, focused on the individual nature of the claims and "heavily weighed" the plaintiffs' forum choice. 2024 WL 4981026, at *6. But the conversion of the Actions to representative class and derivative claims "considerably weaken[s]" that weight. *Koster*, 330 U.S. at 524. And that lesser weight "tips the balance" in favor of transfer. *Umbriac*, 388 F. Supp. at 267.

On top of that, where the lead plaintiff resides outside the district, the "assumption that the plaintiff's choice will be a convenient one . . . is much less reasonable," *In re Apple*, 602 F.3d 909, 913 (8th Cir. 2010), and "the usual reasons for deferring to a plaintiff's choice of forum do not apply," *Yahoo!*, 2008 WL 707405, at *5-6; *see also 3M*, 2020 WL 13924735, at *2; *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 423 (2007). Here, neither of the Derivative Action plaintiffs nor the presumptive Securities Class Action lead plaintiff are from Florida, much less this District. OSTRS is "based in Ohio." *Riviera*, ECF 42 at 14. And the derivative lead plaintiffs are from Virginia, New York, and the Mountain West. *Supra* D. [12] In fact, the Derivative Action was brought *on behalf* of Target, a Minnesota company.[13]

### B.     Minnesota Is Far More Convenient for Key Non-Party Witnesses.

In securities fraud cases, "key witnesses are frequently officers and employees of the [company]." *In re Connetics*, 2007 WL 1522614, at *3 (S.D.N.Y. May 23, 2007); *see also 3M*, 2020 WL 13924735, at *2 (in securities action "most of the witnesses will

---

[12] That *FSBA* and *Riviera* were both initially filed by Florida residents is irrelevant. *Sanchez v. Centene*, 2017 WL 11496768, at *1 (C.D. Cal. Mar. 1, 2017).

[13] Moreover, the Actions seek redress for conduct that occurred outside this forum. *See infra* II.D. Thus, plaintiffs' forum choice receives even less deference. *See Fairstein*, 2020 WL 5701767, at *10.

15

likely be employees who work at [company's] headquarters"); *Huntley*, 132 F. Supp. 3d at 1373. As set forth in the Rath Moos Declaration and above, *supra* G, the key witnesses—including non-employee witnesses—live in Minnesota.[14] The convenience of these non-party witnesses is "generally considered one of the most important factors," especially the convenience of witnesses whom neither party can compel to attend trial. *Craig*, 2024 WL 4981026, at *3; *see also Fairstein*, 2020 WL 5701767, at *9; *Huntley*, 132 F. Supp. 3d at 1373; *Gould v. Nat'l Life Ins. Co.*, 990 F. Supp. 1354, 1359 (M.D. Ala. 1998).

  1. <u>Key Non-Party, Non-Employee Witnesses Reside in Minnesota.</u>

The District of Minnesota is more convenient for the key non-party witnesses. Mulligan, Hennington, and Schindele were all senior Target executives and played key roles in overseeing and responding to the backlash to the 2023 Pride Collection. Decl. ¶¶15, 19, 37-38. As members of the Steering Committee, Hennington and Schindele conducted an item-by-item risk assessment of the 2023 Pride Collection before it was released, *id.* ¶¶15, 29, and Hennington led an additional review of the Collection following the outbreak of backlash, *id.* ¶37. As the Chief Stores Officer, Schindele also made decisions about in-store adjustments to the Collection in response to the backlash. *Id.* ¶38. And, as Chief Operating Officer, Mulligan was responsible

---

[14] The Court previously held that it needed "more information" because Target had not provided evidence that non-employee witnesses "live in the District of Minnesota" and because it wasn't clear from Target's hybrid work policy whether Target's employees reside in Minnesota. *Craig*, 2024 WL 4981026, at *3. Accordingly, Defendants have provided the accompanying Rath Moos Declaration showing that the key witnesses, including individuals not within Target's control, live in Minnesota. Courts routinely find such declarations sufficient to meet a defendant's burden on a motion to transfer. *See, e.g.*, *Maxon*, 2018 WL 3850011, at *1-2 (relying on declarations in granting transfer).

16

for managing adjustments to Target's operations in response to the backlash. *Id.* ¶38. They are thus key witnesses, *see MGIC*, 604 F. Supp. 2d at 975 (key witnesses in securities action were members of management team), and their absence at trial would prejudice Defendants. All three live in Minnesota, Decl. ¶51, and are beyond this Court's subpoena powers.

2.      <u>Key Non-Party, Employee Witnesses Reside in Minnesota.</u>

The other key non-party witnesses are all current senior Target employees who live in Minnesota. *Supra* G; Decl. ¶¶50-51. That also weighs in favor of transfer because forcing those witnesses to travel to this District for hearings or trial would inconvenience them and "carries a real risk of disrupting [Target's] operations." *In re Hanger Orthopedic Grp. Sec. Litig.*, 418 F. Supp. 2d 164. 169 (E.D.N.Y. 2006). Moreover, it is likely that by the time of trial, numerous current Target employees will work elsewhere. It's already happening. Mulligan and Schindele were Target employees when the Court denied transfer in *Craig* but have since retired. Decl. ¶51. And Hennington will be leaving Target in September 2025. *Id.* ¶15. The only way to ensure the availability of the key witnesses for trial is to transfer this case to the District of Minnesota, where they all live. *See Huntley*, 132 F. Supp. 3d at 1373; Decl. ¶51.[15]

---

[15] This Court has found that "[v]irtual proceedings may not be enough for the Court (or jurors) to properly evaluate the witnesses' credibility." *Fairstein*, 2020 WL 5701767, at *8. Live testimony is critical in a *fraud* case because assessing scienter turns on witness credibility. Because "a trial in [Minnesota] is more likely to be based upon the presentation of live testimony by the key witnesses" it will provide "a more effective means for the trier of fact to come to a just result." *Aer Advisors v. Fidelity Brokerage Servs.*, 2017 WL 11318698, at *3 (S.D. Fla. Nov. 8, 2017); *see also In re Nematron Sec. Litig.*, 30 F. Supp. 2d 397, 403 (S.D.N.Y. 1998) (video testimony "is not workable . . . where all of the material witnesses live or work in [transferee forum] and have no connection to [transferor forum]").

17

3.      Plaintiffs Don't Live Here and Their Conduct Is Not Key.

The Derivative Action lead plaintiffs and presumptive lead plaintiff in the Securities Class Action do not live in this District, or even Florida. *Supra* B-C. There is no reason litigating here, rather than in Minnesota, would be more convenient for them. *See Wal-Mart*, 2012 WL 12543462, at *2. In any event, these are fraud cases, so "[i]t is [defendants'] statements, actions, and intentions that are likely to determine the outcome of this litigation, not [plaintiff]'s." *Huntley*, 132 F. Supp. 3d at 1373.

That's even more true in securities cases. In the Securities Class Action, plaintiffs plead reliance based on a fraud-on-the-market theory. *Riviera* Compl. ¶¶172-175; *FSBA* Compl. ¶¶515-21; *Craig* AC ¶¶511-17. Under that theory, "plaintiffs do not have to prove the element of reliance by individual investors," including "what any individual class member knew or heard." *In re Mannatech Sec. Litig.*, 2007 WL 9717517, at *4 (D.N.M. Jan. 29, 2007). The focus is on Defendants' conduct. *Id.*

And in the Derivative Action, Target is "the real plaintiff." *Ward v. El Rancho Manana*, 945 N.W.2d 439, 447 (Minn. Ct. App. 2020) (citing *Ross v. Bernhard*, 396 U.S. 531, 538 (1970)). The named plaintiffs are "mere phantom[s]" who have no "active part" in the factual issues and no relevant knowledge. *Koster*, 330 U.S. at 525. And there's no question the District of Minnesota is more convenient for Target. *Infra* II.E.

**C.    Unwilling Witnesses Could Be Compelled To Testify in Minnesota, But Not in Florida.**

"[I]t makes sense to transfer this case to the jurisdiction where most of the nonparty witnesses may be reached through a [trial] subpoena." *Fairstein*, 2020 WL

18

5701767, at *9; *Clinton v. Sec. Benefit Life Ins.*, 2020 WL 6120565, at *7 (S.D. Fla. June 29, 2020). That is Minnesota, not this District. Although Target may be able to compel its *current* employees to testify at a trial here, *Craig*, 2024 WL 4981026, at *5, it cannot compel non-employees, including *former* employees to do so, *see, e.g.*, *Huntley*, 132 F. Supp. 3d at 1375; *Gould*, 990 F. Supp. at 1359. Several key witnesses live in Minnesota but *do not* work for Target. *Supra* II.B.1. Others may cease working for Target before trial but will likely continue to live in Minnesota. *Supra* II.B.2.

**D.     The Conduct at Issue All Occurred in Minnesota.**

The locus of operative facts is "the site of events from which the claim arises." *Craig*, 2024 WL 4981026, at *5 (citing *Nat'l Tr. Ins. v. Pa. Nat'l Mut. Cas. Ins. Co.*, 223 F. Supp. 3d 1236, 1243-44 (M.D. Fla. 2016)). The Court found this factor neutral in *Craig* because Target had a hybrid work policy and held certain annual meetings online or in Texas. *Id.* But that was before the Rath Moos Declaration submitted in support of this motion, which shows that the at-issue conduct occurred in Minnesota. *Supra* F.

**The alleged misstatements were prepared and disseminated from Minnesota**. "Misrepresentations and omissions are deemed to 'occur' in the district where they are transmitted or withheld." *Yes Lighting v. PSG Energy Grp.*, 2019 WL 13225114, at *3 (S.D. Fla. Sept. 19, 2019). Here, that is Minnesota. The Annual Reports and Proxies—including the alleged misstatements—were drafted in and transmitted from Target HQ. Decl. ¶¶41-45. That makes sense. Corporate "decision[s] or alleged misrepresentation[s] would naturally be coordinated or emanate from Defendants' headquarters." *Huntley*, 132 F. Supp. 3d at 1374; *see also Clinton*, 2020 WL 6120565,

19

at *6 ("common thread" connecting misstatement allegations was that they related back to work performed and decisions made in the company's headquarters).[16]

**Target oversaw the risks of the 2023 Pride Collection from Minnesota**. Target's risk oversight teams performed multiple *item-by-item reviews* of the 2023 Pride Collection to assess and manage risk related to it both before and after its release. Decl. ¶¶16, 29, 37. Those reviews took place at Target HQ. *Id.* Decisions about reducing the risk of the Collection also occurred in Minnesota. Decl. ¶¶31-32, 37-40.[17]

**Target's Hybrid Work Policy Required the Key Witnesses to Work Primarily at Target HQ**. All the key teams and witnesses were based out of Target HQ. *Supra* F-G. None of the key witnesses had remote work arrangements, so they were all required to work primarily from Target HQ and attend in-person meetings there. *Supra* G. More to the point, the key witnesses *all lived in Minnesota*. Decl. ¶¶50-51. So, whether they worked from the office or home, that work occurred in Minnesota.[18]

### E.    Minnesota Is More Convenient for the Parties.

It cannot be disputed that Minnesota is more convenient for Defendants. Target is headquartered in Minneapolis and the Individual Defendants regularly attend

---

[16] The May 24, 2023 statements were also drafted and disseminated from Target HQ. Decl. ¶¶38, 39.
[17] It is irrelevant that the 2023 Pride Collection was sold in stores around the country, including in this District. The purported misconduct is not the *sale* of the Collection, but Target's statements that allegedly misled investors. *See 3M*, 2020 WL 13924735, at *2 (securities actions redress economic harm suffered by investors for alleged misstatements, not other harm). Decisions about the Collection were made from Minnesota, Decl. ¶¶31-32, 37-40; the sale of the Collection in stores is irrelevant. *See McIlvaine*, 2008 WL 11332000, at *2 (identifying the location where the policy in question was established, i.e., headquarters, as the locus of operative facts); *Ravenwoods*, 2005 WL 236440, at *5.
[18] That Target has held annual shareholder meetings virtually or in Texas is irrelevant. None of the allegations in this case concern conduct that took place at or during those meetings. The Proxies, which plaintiffs do allege contained misstatements, were prepared in Minnesota. Decl. ¶¶41-45.

meetings at or work out of Target HQ. *Supra* F.

Conversely, plaintiffs' convenience carries "no particular weight" in the Securities Class Action, *Passmore*, 2024 WL 266531, at *6, because class members reside nationally and "any two given states will likely be of equal convenience as a forum," *Abreu v. Pfizer*, 2022 WL 2355541 (S.D. Fla. June 22, 2022); *see also Toomey v. Ripple Labs*, 2021 WL 12306727 (M.D. Fla. Aug. 20, 2021). The same is true for the Derivative Action because the plaintiffs there have no factual significance. *Am. Chems.*, 2014 WL 294481, at *3; *Roy*, 2002 WL 32657085, at *3. Moreover, neither the Derivative Action lead plaintiff nor the presumptive Securities Class Action lead plaintiff are from this District, much less Florida. *Supra* C-D.[19] Nor are their primary lawyers. *Id.* And it cannot be disputed that the "vast majority" of the plaintiffs in this nationwide class action "live outside of Florida," so "this factor weighs in favor of transfer." *Maxon*, 2018 WL 3850011, at *3.

In *Craig*, the Court held that transfer would place "heavy burdens" on the individual plaintiffs because of their need to engage local counsel in Minnesota. *Craig*, 2024 WL 4981026, at *4. That may have made sense for Craig, an individual who lives in this District. But now the Derivative Action lead plaintiffs and the presumptive Securities Class Action lead plaintiff and their counsel all have experience litigating in Minnesota and relationships with Minnesota counsel. *See* App'x A. And lead "counsel may seek admission pro hac vice in the [District of Minnesota]." *Grail*

---

[19] FSBA, who applied to serve as lead plaintiff but does not have the largest financial interest at stake and therefore is presumptively not lead plaintiff, *supra* C, is from Florida, but not this District.

*Semiconductor. v. Stern*, 2013 WL 2243961, at *3 (S.D. Fla. May 21, 2013).  Thus, "[t]he idea that transfer will require [plaintiffs] to start over and find completely new counsel is mistaken, unpersuasive, and not a factor in this Court's analysis."  *Id.* at *5.

**F.     The District of Minnesota Is Better Situated To Decide the Minnesota Law Issues Relevant to the Derivative Action.**

The Court previously held that this factor was "a draw given that this is a federal securities law case."  *Craig*, 2024 WL 4981026, at *5.  That is true for the Securities Class Action.  But the Derivative Action primarily concerns issues of Minnesota law. And briefing on the *Ranacis* action, which is substantially similar to the Derivative Action, is already underway in Minnesota.  *Supra* E.  Because judicial economy favors litigating the Actions together, *see Huellemeier v. Teva Pharms. Indus.*, 2017 WL 5523149, at *5 (S.D. Ohio Nov. 17, 2017), this factor now weighs in favor of transfer.

It is also well established that there is an "appropriateness" in having the trial of a case in "a forum that is at home with the state law that must govern the case, rather than having a court in some other forum untangle problems . . . in law foreign to itself."  *Am. Dredging v. Miller*, 510 U.S. 443, 448-49 (1994) (Scalia, J.).  And a federal court sitting in Minnesota interprets Minnesota law with far greater frequency than this Court, and "thus, can fairly be expected to have developed some expertise in that area."  *Food Mktg. Consultants v. Sesame Workshop*, 2010 WL 1571206, at *10 (S.D. Fla. Mar. 26, 2010); *see also Delorenzo v. HP Enter. Servs.*, 79 F. Supp. 3d 1277, 1281 (M.D. Fla. Feb. 11, 2015) ("A district judge in the District of [Minnesota] indisputably enjoys an advantage over the Middle District of Florida in deciding a claim based on the law

22

of the District of [Minnesota].”); *Grail*, 2013 WL 2243961, at *6.

The Derivative Action alleges various corporate governance claims. Deriv. AC ¶¶246-68. Since Target is a Minnesota corporation, *id.* ¶24, those claims sound in Minnesota law. *Mukamal v. Bakes*, 378 F. App’x 890, 897 (11th Cir. 2010) (“[T]he internal affairs of corporations are governed by the laws of the state of incorporation.”). In addition, the Derivative Action pleads demand futility. Deriv. AC ¶¶192-219. Whether that has been adequately alleged is also governed by Minnesota law. *See Whitten v. Clarke*, 41 F.4th 1340, 1348 (11th Cir. 2022) (the law of the state of incorporation determines the requirements for pleading demand futility).

The “legal problems” presented in the Derivative Action are serious ones. The derivative plaintiffs ask the Court to reject well-established Minnesota precedent and Minnesota legislative decrees. Specifically, the Derivative Action alleges demand futility based on a “substantial likelihood of liability” theory that Minnesota courts reject. *See, e.g.*, *Pemberton ex rel. Patterson Cos. v. Anderson*, 412 F. Supp. 3d 1058, 1062-64 (D. Minn. 2019); *Gerring Props. v. Gerring*, 2017 WL 10662042, at *12 (Minn. Dist. Ct. Nov. 28, 2017); *In re Medtronic Deriv. Litig.*, 68 F. Supp. 3d 1054, 1062, 1065 n.3 (D. Minn. 2014); *La. Mun. Police Emps. Ret. Sys. v. Finkelstein*, 2012 WL 10057353, at *4 (Minn. Dist. Ct. May 29, 2012). And the Derivative Action alleges that the Individual Defendants were obligated to “give shareholder interests primacy over those of other stakeholders.” Deriv. AC ¶56. But Minnesota law expressly permits Minnesota corporations and directors to consider the interests of non-shareholder

23

constituents.  Minn. Stat. §302A.251(5).[20]  The District of Minnesota is best situated to "untangle" and resolve these challenges to Minnesota law, *Am. Dredging*, 510 U.S. at 448-49, and, indeed, is scheduled to hold a hearing on them in October, *see Ranacis*, ECF 35, 44.

### G.      Minnesota Has a Far Greater Interest than Florida in the Actions.

This factor considers "the relative interests of the two forum states in the litigation."  *Fairstein*, 2020 WL 5701767, at *10.  Here Minnesota has a far greater interest than Florida.  While "Florida would have a public interest in addressing any potential securities violations that occurred within its borders," Minnesota has "an even greater interest in policing the actions of its resident corporations," like Target. *Kadel*, 2008 WL 11319455, at *5; *see also 3M*, 2020 WL 13924735, at *2; *Irwin v. Zila*, 168 F. Supp. 2d 1294, 1297 (M.D. Ala. 2001); *Grail*, 2013 WL 2243961, at *6; *Clinton*, 2020 WL 6120565, at *9.  That is especially true where the conduct occurred in Minnesota, *supra* II.D, and where Minnesota law governs some claims, *supra* II.F.

### H.      Trial Efficiency Favors Transfer.

Trial efficiency also counsels in favor of transfer because the key witnesses are in Minnesota.  *Supra* II.B.  And there is no cost to trial efficiency since discovery has not begun.  *See Kang Haggerty & Fetbrot v. Hayes*, 2017 WL 9938022, at *3 (M.D. Fla. Mar. 22, 2017); *Penny v. AT&T*, 2015 WL 12828116, at *3 (S.D. Fla. Apr. 6, 2015).

---

[20] "[A] director may, in considering the best interests of the corporation, consider the interests of the corporation's employees, customers, suppliers, and creditors, the economy of the state and nation, community and societal considerations," not just the long-term or "short-term interests of the corporation and its shareholders."  Minn. Stat. §302A.251(5).

## I.    The Remaining Factors Are Neutral.

The remaining factors—the location of relevant documents and relative means of the parties—are neutral.  The Court previously held that the location of relevant documents does not favor transfer because the documents can be electronically transmitted.  *Craig*, 2024 WL 4981026, at *4.  But the documents are in Minnesota, Decl. ¶¶1, 9, 42, 45-46, so this factor favors transfer or is otherwise neutral.

The Court also previously held that the relative means of the parties weighed against transfer because the individual *Craig* plaintiffs would bear the cost of obtaining Minnesota counsel.  *Craig*, 2024 WL 4981026, at *5.  But this is now a representative action.  Even if plaintiffs still had "modest means relative to those of Defendant," it would be "of absolutely no moment" because "counsel are financing the case on behalf of Plaintiffs," and local counsel will either be retained by class counsel or appointed as additional class counsel.  *Maxon*, 2018 WL 3850011, at *4; *see also In re Principal U.S. Prop. Account Litig.*, 2010 WL 1645042, at *5 (S.D.N.Y. Apr. 22, 2010).  Moreover, neither OSTRS nor FSBA have modest means—they are investment funds with over $95 and $200 billion under management, respectively.  *Supra* C.  And lead counsel are national law firms that have "served as lead counsel in many of the largest securities class action[s]" with "substantial resources" to prosecute these actions.  *Supra* C-D.  This is no longer a case about individual stockholders with small holdings.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court transfer the Actions to the District of Minnesota.

25

## LOCAL RULE 3.01(G) CERTIFICATION

Pursuant to Local Rule 3.01(g), Defense counsel have conferred with counsel for all plaintiffs in the Actions by telephone; plaintiffs oppose the relief requested in this motion.

Date:  August 1, 2025

Respectfully submitted,

Traci T. McKee
**FAEGRE DRINKER BIDDLE & REATH LLP**
1500 Jackson Street, Suite 201
Fort Myers, Florida 33901
Telephone:  (239) 286-6910
traci.mckee@faegredrinker.com

Jeffrey P. Justman (*pro hac vice*)
**FAEGRE DRINKER BIDDLE & REATH LLP**
2200 Wells Fargo Center
90 South 7th Street
Minneapolis, Minnesota 55402
Telephone:  (612) 766-7000
jeff.justman@faegredrinker.com

Sandra Grannum (*pro hac vice*)
**FAEGRE DRINKER BIDDLE & REATH LLP**
600 Campus Drive
Florham Park, NJ 07932
Telephone:  (973) 549-7000
sandra.grannum@faegredrinker.com

 /s/ Sandra C. Goldstein
Sandra C. Goldstein, P.C. (*pro hac vice*)
   *Lead Counsel*
Alexander J. Rodney (*pro hac vice*)
Jacob M. Rae (*pro hac vice*)
Ashley P. Grolig (*pro hac vice*)
**KIRKLAND & ELLIS LLP**
601 Lexington Avenue
New York, NY 10022
Telephone:  (212) 446-4779
sandra.goldstein@kirkland.com
alexander.rodney@kirkland.com
jacob.rae@kirkland.com
ashley.grolig@kirkland.com

*Counsel for Defendants*

26

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on August 1, 2025, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which provided electronic service upon all counsel of record.

/s/ Sandra C. Goldstein
Sandra C. Goldstein, P.C. (*pro hac vice*)
  *Lead Counsel*
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
Telephone: (212) 446-4779
sandra.goldstein@kirkland.com