**IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION**

| | |
|---|---|
| In re Target Corp. Securities Class Action Litigation | No. 2:25-cv-00135-JLB-KCD |

**MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS'
RENEWED MOTION TO TRANSFER**

Plaintiffs The State Board of Administration of Florida, Brian Craig, Steven Cook, Carole Bowe, Laura Thompson, and Inspire Advisors, LLC, submit this opposition to Defendants' renewed motion to transfer. ECF No. 50.

Defendants already lost a transfer motion in December 2024 on the same claims in the then-lead case against Target—a case that has now been consolidated with this one filed by the State of Florida itself. *See Craig v. Target Corp.*, No. 2:23-cv-599, 2024 WL 4981026 (M.D. Fla. Dec. 4, 2024) (Badalamenti, J.) (denying Defendants' transfer motion). The Court should promptly deny Defendants' renewed motion.

## I.      Defendants' Motion Is Untimely.

At the outset, the Court should deny the motion as untimely. "Section 1404(a) sets no time-limit on when a motion to transfer must be filed, but the prevailing rule is that the movant must act with 'reasonable promptness' in seeking transfer." *Willis v. Okeechobee Cnty.*, No. 11-cv-23765, 2012 WL 12845648, at *2 (S.D. Fla. Aug. 16, 2012). This means either a failure to act promptly or the likelihood of delay resulting from transfer is a basis to deny a transfer motion. *See id.* In *Willis*, the court denied transfer because the motion was filed eight months after the suit was commenced. *Id.*

1

Defendants here waited to seek transfer until nearly six months after SBA filed its complaint in this case, despite having a template transfer motion in the hopper from the *Craig* case. Even more significantly, Defendants meaningfully participated in the litigation in this case after the *Craig* transfer decision, including filing a lengthy response regarding consolidation almost two months ago—without once mentioning venue concerns despite having raised them in *Craig*. ECF No. 43. Further, Defendants' deadline to file a response to the SBA complaint passed months ago—again without raising any hint of venue concerns.

Defendants provide no explanation for their unreasonable delay. Seeking transfer at this late date appears to be merely a stall tactic to delay this Court ruling on the pending lead-plaintiff motions and moving this case along. The untimeliness of Defendants' motion provides more than a sufficient basis to deny transfer.[1]

## II. The Court Already Ruled on the Transfer Factors, And This Case Now Has Even Stronger Florida Ties.

Even if the Court did consider the merits of the transfer motion, it should still be denied. This Court's prior order considered nearly a dozen transfer factors—and held that *none of them* favored transfer:

- "[C]onvenience of the witnesses" favors Plaintiffs because any important Target witnesses "are employees of the defendant company" and "their testimony can

---

[1] At the very least, Defendants' delay is a strong factor in favor of denying the motion. *See, e.g., Gaetano v. Gilead Scis., Inc.*, No. 21-cv-1418, 2021 WL 3185822, at *5–6 (D.N.J. July 27, 2021) (denying transfer motion filed five months into case, after court had ruled on a motion to dismiss).

be easily obtained for depositions and trial." *Craig*, 2024 WL 4981026, at *3. That is especially true because "depositions can easily be taken by remote means." *Id.*

- The "location of relevant documents and the relative ease of access to sources of proof" likewise favors Plaintiffs. *Id.* at *3–4. The "electronic transmittal of documents … lessens the burden of exchanging discoverable information." *Id.* at *4.

- The "convenience of the parties" "clearly" favors Plaintiffs. *Id.* "Defendants overlook the heavy burdens that transfer would place on the Plaintiffs," who would be "forced to engage additional lawyers to litigate this action in Minnesota," a task that would "be easy" for Defendants. *Id.*

- "Target has more than 75 stores in the Middle District of Florida," and "nearly as many Target Directors reside in this District as the directors residing in Minnesota." *Id.* at *3.

- The "locus of operative facts" is neutral—which ultimately favors denial of Defendants' motion, given the strong presumption against transfer. *Id.* at *5. "[M]any of Target's directors live outside of Minnesota," and the relevant shareholder meetings occurred "online and in Austin, Texas." *Id.* Further, Target requires only rare in-person attendance in Minnesota. *Id.*

- The "[a]vailability of process to compel the attendance of unwilling witnesses" "weighs in favor of Plaintiffs" for the same reasons as above. *Id.*

- The "forum's familiarity with the governing law" was—at the time—"at best, a draw." *Id.*

3

- "Trial efficiency and interests of justice" likewise favored Plaintiffs for the same reasons, plus a different securities matter then-pending in Minnesota was about an "entirely independent" set of allegations, and both courts are undoubtedly quite busy. *Id.* at *6.

- "Congress has clearly provided liberal choice regarding actions under the Exchange Act." *Id.* Those venue provisions are "strikingly broad and less restrictive" than normal venue provisions, which already provide a strong presumption towards the Plaintiffs' chosen venue. *Id.*

\* \* \*

***Defendants Effectively Seek Reconsideration.*** Defendants seek to relitigate this Court's prior decision made in the now-consolidated action, but they never mention the reconsideration standard, let alone try to satisfy it. As this Court has explained, "[r]econsideration of a court's previous order is an extraordinary remedy that should be used sparingly. Courts have identified three primary grounds justifying reconsideration: (1) an intervening change in controlling law; (2) the availability of new evidence; (3) the need to correct clear error or prevent manifest injustice." *Terrace III at Highland Woods Ass'n, Inc. v. Empire Indem. Ins. Co.*, No. 2:20-cv-861, 2021 WL 3633629, at *1 (M.D. Fla. Aug. 17, 2021) (Badalamenti, J.) (cleaned up). "A motion for reconsideration cannot be used to relitigate old matters, raise argument or present evidence that could have been raised" earlier. *Id.*

4

There certainly is no intervening change of law or clear error to correct. Defendants' arguments seem premised on alleged new evidence, *see* ECF No. 50 at 12 (so-called "new proof"),[2] but the vast majority of transfer considerations have not even arguably changed since this Court ruled in December 2024.

Most notably, Defendants insist they have "new proof" about the underlying allegations' ties to Minnesota. *Id.* This sort of "try, try again" relitigation of matters already ruled upon and settled is exactly why courts so strongly disfavor reconsideration requests. "A motion for reconsideration cannot be used to relitigate old matters, raise argument or *present evidence that could have been raised*" earlier. *Terrace III*, 2021 WL 3633629, at *1 (Badalamenti, J.) (emphasis added).

Defendants' "new proof" of Minnesota connections is thus neither "new" nor "proof" (nor persuasive). In its briefing in *Craig*, Defendants argued *the exact same points*, insisting it was undisputed that the key events all occurred in Minnesota and the key individuals all worked in Minnesota[3]—but this Court denied transfer anyway. *Craig*, 2024 WL 4981026, at *5. Defendants are simply reraising the same points already found insufficient. Even if there were something new, Defendants never explain why they could not have raised those points and evidence—a declaration by

---

[2] Page numbers for Defendants' motion refer to the court-stamped numbering at the top of the page.

[3] For example, Defendants' reply in support of transfer in *Craig* argued it was undisputed that "Target issued the disclosures *from Minnesota*; its executives and directors performed their responsibilities from Minnesota; and Target's Investor Relations team sat *in Minnesota* and addressed investor questions *from Minnesota*. Even Plaintiffs' Confidential Witness admits that 'senior-executive level' decisions about the Pride Collection were made *from Minnesota*." Defs.' Reply in Further Supp. of Their Mot. to Transfer this Action at 8, *Craig*, No. 2:23-cv-599 (Mar. 20, 2024), ECF No. 90 (emphases in original).

their own employee—in the prior briefing. In any event, this Court already held that the location of Defendants' employees is legally irrelevant: "courts typically ignore the convenience of witnesses who are employees of the defendant company because their testimony can be easily obtained for depositions and trial." *Id.* at *3.

Accordingly, with a few exceptions addressed below, every argument in Defendants' renewed motion is something they previously argued and lost—or something they could have argued and chose not to do so, and thus have forfeited (and even if not forfeited, such arguments were apparently unpersuasive even in the view of Defendants' sophisticated counsel who declined to raise them last time).

***Relevance of Class-Action Claims.*** To be sure, this case is now a putative class action, but courts routinely deny transfer in putative class actions, including in securities cases, because the plaintiff's choice of venue is still entitled to weight. *See, e.g.*, *Manchin v. PACS Grp., Inc.*, No. 24-cv-8636, 2025 WL 1276569, at *1 (S.D.N.Y. May 1, 2025) (collecting authorities; denying motion to transfer to Utah even though the defendant was headquartered in Utah, most relevant officials resided in Utah, and key events occurred in Utah).

***Stronger Florida Ties.*** Even considering the putative class claims, this case now has even stronger Florida ties than at the time of the *Craig* transfer decision. Since then, the State Board of Administration of Florida (SBA), represented by the Florida Attorney General himself, has joined as a plaintiff—and SBA is the likely *lead plaintiff*, too. *See* ECF Nos. 56, 59, 62 (SBA's motion, response, and reply in support of

appointment). Indeed, the SBA action has already been designated the *lead* case for these consolidated proceedings. ECF No. 44.

Those are serious ties to Florida that did not exist at the time of this Court's prior transfer ruling, as even Defendants acknowledge that the location of the lead plaintiff is a relevant factor. ECF No. 50 at 25.[4]

***This Court's Expertise.*** Further, this Court has now spent years on these claims, including issuing an exhaustive opinion on Defendants' motion to dismiss in *Craig*. There is no other court remotely as "familiar[] with the governing law" and allegations in this case. *Craig*, 2024 WL 4981026, at \*5.

That is another significant "new" factor in favor of denying transfer. Defendants themselves acknowledge this factor does *not* favor transfer of the securities claims. ECF No. 50 at 32 (labeling this factor a "draw").

***A New Minnesota Suit Proves This Case Should Remain in Florida.*** Defendants also cite a suit filed in Minnesota in July 2025 and suggest this shows new Minnesota connections. ECF No. 50 at 17 (citing *Ranacis v. Cornell*, No. 0:25-cv-2743 (D. Minn.)). It appears that case may soon be voluntarily dismissed, but it was irrelevant anyway because it raises derivative claims, which Defendants agreed in prior filings are "materially different" from Plaintiffs' securities claims. ECF No. 43 at 2.

---

[4] Another Florida plaintiff has also sued in this District and been consolidated with the Florida SBA lead case. *City of Riviera Beach Police Pension Fund v. Target Corp.*, No. 2:25-cv-85 (M.D. Fla.).

Defendants themselves have indicated the primacy of this Florida case. Two weeks *before* Defendants filed the motion to transfer this case, they filed an unopposed motion asking the Minnesota court "to stay th[e Minnesota] case during the pendency of the Securities Actions" in *this* Court. Mem. in Supp. of Defs.' Mot. to Dismiss or, in the Alternative, Defs.' Unopposed Mot. to Stay at 26, *Ranacis*, No. 0:25-cv-02743 (D. Minn. July 17, 2025), ECF No. 35.

Defendants are speaking out of both sides of their mouth to different courts. They asked the Minnesota court to stay its hand pending resolution of the Florida cases, but then cite the Minnesota case as a basis for this Court to transfer the Florida cases to Minnesota. One would have expected Defendants at least to inform this Court of this unusual approach, but their motion to transfer carefully avoids noting their unopposed motion to stay the Minnesota action in favor of the same cases Defendants now ask this Court to transfer *to* Minnesota. ECF No. 50 at 17, 32, 34.

This makes twice now that Defendants have tried to obtain transfer by citing inapt cases in Minnesota. *See Craig*, 2024 WL 4981026, at *6 (rejecting Defendants' reliance on a pending Minnesota suit about pandemic-induced product shortages).

***The Retirement of Two Employees Changes Nothing.*** Defendants also claim three relevant employees have since separated from Target, ECF No. 50 at 26, while admitting that one of them actually still works with Target as a "strategic advisor," ECF No. 50-2 at 6 n.1. There are many flaws with this argument. *First*, Defendants cite nothing to support the notion that employee separations *after* the initiation of litigation should be considered. *Second*, the two who have retired (John Mulligan and

Mark Schindele) did so in February 2025, but Defendants provide no explanation for why they waited six months to raise this point. *Third*, Defendants never say Mulligan and Schindele would refuse to assist Target with its defense (it would be shocking if they did), but courts consider process-related arguments only in the context of "compel[ling] the attendance of *unwilling* witnesses." *Manuel v. Convergys Corp.*, 430 F.3d 1132, 1135 n.1 (11th Cir. 2005) (emphasis added). *Fourth*, any discovery inconvenience would be minimized because "depositions can easily be taken by remote means." *Craig*, 2024 WL 4981026, at *3. *Fifth*, even by Defendants' own lights, the vast majority of employees and officials relevant to this case remain affiliated with Target and thus will be easily obtained for discovery, including every individual Defendant, plus Erin Moos, Sarah Bakken, Kayla Castaneda, Jill Sando, Katie Boylan, Mark Krause, and Amanda Nusz. ECF No. 50-2 at 3, 5–7, 12–15.

\* \* \*

Denying Defendants' prior transfer motion was an easy call—not a single factor favored transfer. Defendants' untimely, renewed motion is even weaker. It should be swiftly denied so the parties can move towards resolving these long-running claims.

9

## CONCLUSION

The Court should decide the pending lead-Plaintiff motions and promptly deny Defendants' renewed motion to transfer.

Dated: August 15, 2025                    Respectfully submitted,

|  |  |
|---|---|
| | /s/ R. Trent McCotter |
| JAMES UTHMEIER (FBN: 113156) | R. TRENT MCCOTTER (*pro hac vice*) |
| Attorney General |   *LEAD COUNSEL* |
| State of Florida | JONATHAN BERRY (*pro hac vice*) |
| Office of the Attorney General | Boyden Gray PLLC |
| The Capitol, Pl-01 | 800 Connecticut Avenue NW |
| Tallahassee, Florida 32399-1050 | Suite 900 |
| (850) 414-330 | Washington, DC 20006 |
| | (202) 706-5488 |
| | tmccotter@boydengray.com |
| | |
| JASON B. GONZALEZ (FBN: 146854) | |
| PAUL C. HUCK, JR. (FBN: 968358) | ANDREW J. BLOCK (*pro hac vice*) |
| SAMUEL J. SALARIO, JR. (FBN: 083460) | America First Legal Foundation |
| Lawson Huck Gonzalez, PLLC | 611 Pennsylvania Avenue S.E. |
| 215 S. Monroe Street, Suite 320 | No. 231 |
| Tallahassee, FL 32301 | Washington, D.C. 20003 |
| (850) 825-4334 | (202) 964-3721 |
| jason@lawsonhuckgonzalez.com | andrew.block@aflegal.org |

*Counsel for Plaintiffs State Board of Administration of Florida, Steven Cook, Carol Bowe, Inspire Advisors, LLC, Laura Thompson, and Brian Craig*

## CERTIFICATE OF SERVICE

I hereby certify that on August 15, 2025, I filed the foregoing with the Clerk of Court via the Court's CM/ECF system, which will serve all counsel.

/s/ R. Trent McCotter

R. Trent McCotter