# THE UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### FORT MYERS DIVISION

| | |
|---|---|
| *In re Target Corp. Securities Class Action Litigation* | Case No. 2:25-cv-00135-JLB-KCD |
| *In re Target Corp. Shareholder Derivative Litigation* | Case No. 2:25-cv-00021-JLB-KCD |

## DEFENDANTS' REPLY IN FURTHER SUPPORT
## OF THEIR OMNIBUS MOTION TO TRANSFER

## TABLE OF CONTENTS

I.     THE SUPREME COURT REJECTS SPECIAL DEFERENCE. ...................1

II.    KEY CHANGES SINCE *CRAIG* FAVOR TRANSFER TO
MINNESOTA. .......................................................................................3

III.   THE TRANSFER FACTORS DECISIVELY FAVOR MINNESOTA. ........4

     A.    #1 Most Important Factor (Non-Party Witnesses) Favors
Transfer.....................................................................................4

     B.    #2 Most Important Factor (Locus of Operative Facts) Favors
Transfer.....................................................................................7

     C.    The Other Factors Favor Minnesota. ...................................................7

IV.   PLAINTIFFS CANNOT ESCAPE THE MERITS OF TRANSFER. ...........9

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re 3M Co.*,
2020 WL 13924735 (3d Cir. Nov. 18, 2020) ..................................................2, 9

*Am. Dredging v. Miller*,
510 U.S. 443 (1994) ..................................................8

*Aon Corp. v. Cabezas*,
2018 WL 1184728 (N.D. Ill. Mar. 7, 2018) ..................................................5

*In re Apple*,
979 F.3d 1332 (Fed. Cir. 2020) ..................................................2

*Balt. & O.R. v. Kepner*,
314 U.S. 44 (1941) ..................................................2

*Bankers Ins. v. DLJ Mortg.*,
2012 WL 515879 (M.D. Fla. Jan. 26, 2012) ..................................................10

*Bell v. Rosen*,
2015 WL 5595806 (S.D. Ga. Sept. 22, 2015) ..................................................6

*Clinton v. Security Benefit Life*,
2020 WL 6120565 ..................................................6, 7, 10

*Collett*,
337 U.S. 55 (1949) ..................................................2

*Cordis Corp. v. Siemens-Pacesetter*,
682 F. Supp. 1200 (S.D. Fla. 1987) ..................................................3

*Craig v. Target Corp.*,
2024 WL 4981026 (M.D. Fla. Dec. 4, 2024) ..................................................3, 4, 6, 9

*CTS Corp. v. Dynamics Corp.*,
481 U.S. 69 (1987) ..................................................8

*Dusek v. JP Morgan Chase & Co.*,
2015 WL 12819406 (M.D. Fla. Jan. 16, 2015) ..................................................7

*Enigma Software Grp. USA v. Malwarebytes Inc.*,
 260 F. Supp. 3d 401 (S.D.N.Y. 2017)................................................................7

*Everest Indem. Ins. Co. v. Ro*,
 200 F. Supp. 3d 825 (D. Minn. 2016) ...............................................................3

*Fairstein v. Netflix*,
 2020 WL 5701767 (M.D. Fla. Sept. 24, 2020) ..................................................5

*Gaetano v. Gilead Scis.*,
 2021 WL 3185822 (D.N.J. July 27, 2021) .........................................................8

*Gen. Ret. Sys. of Det. v. Wells Fargo Mortg. Backed Sec. 2006-AR18 Tr.*,
 2009 WL 2137094 (N.D. Cal. July 16, 2009).....................................................3

*Halbert v. Credit Suisse*,
 358 F. Supp. 3d 1283 (N.D. Ala. 2018) .........................................................2, 7

*Johnson Bros. Liquor v. Bacardi*,
 830 F. Supp. 2d 697 (D. Minn. 2011) ...............................................................3

*Kadel v. Flood*,
 2008 WL 11333160 (S.D. Fla. Mar. 18, 2008)..................................................9

*Koster v. Am. Lumbermens Mut. Cas.*,
 330 U.S. 518 (1947) ..................................................................................*passim*

*Lewis & Clark Reg. Water Sys. v. Carstensen Contracting*,
 339 F. Supp. 3d 886 (D.S.D. 2018) ...................................................................3

*Manchin v. PACS Grp.*,
 2025 WL 1276569 (S.D.N.Y. May 1, 2025) ......................................................3

*Manuel v. Convergys Corp.*,
 430 F.3d 1132 (11th Cir. 2005)..........................................................................4

*In re Medtronic Deriv. Litig.*,
 68 F. Supp. 3d 1054 (D. Minn. 2014)................................................................8

*Melo v. Zumper, Inc.*,
 439 F. Supp. 3d 683 (E.D. Va. 2020).................................................................7

*Meterlogic v. Copier*,
 185 F. Supp. 2d 1292 (S.D. Fla. 2002)..................................................... 4, 9, 10

*Odem v. Centex Homes*,
  2008 WL 11427941 (M.D. Fla. July 8, 2008) ..................................................4

*Osgood v. Discount Auto Parts*,
  981 F. Supp. 2d 1259 (S.D. Fla. 2013).................................................... 6, 10

*Ravenwoods v. Bishop*,
  2005 WL 236440 (S.D.N.Y. Feb. 1, 2005)...................................................2, 7

*In re Samsung Elecs.*,
  2 F.4th 1371 (Fed. Cir. 2021) ..........................................................................2

*Seeberger Enters. v. Mike Thompson Recreational Vehicles*,
  502 F. Supp. 2d 531 (W.D. Tex. 2007)...........................................................5

*Short v. Embraer*,
  2021 WL 8918982 (S.D. Fla. Sept. 30, 2021)................................................10

*Stewart Org. v. Ricoh Corp.*,
  487 U.S. 22 (1988) ...........................................................................................3

*Taaffe v. Robinhood Mkts.*,
  2020 WL 13547887 (M.D. Fla. Apr. 13, 2020) ...............................................6

*Tang v. Eastman Kodak*,
  2021 WL 2155057 (D.N.J. May 27, 2021)........................................................9

*Terrace III v. Empire Indem. Ins.*,
  2021 WL 3633629 (M.D. Fla. Aug. 17, 2021) ...............................................10

*ThroughPuter v. Microsoft*,
  2022 WL 874319 (E.D. Va. Mar. 23, 2022)......................................................5

*In re TracFone Wireless*,
  852 F. App'x 537 (Fed. Cir. 2021)....................................................................2

*In re TS Tech USA*,
  551 F.3d 1315 (Fed. Cir. 2008) .......................................................................2

*U.S. v. Nat'l City Lines*,
  337 U.S. 78 (1949) ...........................................................................................2

*Umbriac v. Am. Snacks*,
  388 F. Supp. 265 (E.D. Pa. 1975).............................................................. 3, 4, 9

iv

*Valentino v. Eli Lilly & Co.*,
   2015 WL 4352321 (M.D. Fla. July 14, 2015) ....................................................10

*In re Volkswagen*,
   28 F.4th 1203 (Fed. Cir. 2022) ............................................................................2

*Willis v. Okeechobee*,
   2012 WL 12845648 (S.D. Fla. Aug. 16, 2012)....................................................10

*Willison v. Smithfield Packaged Meats*,
   2021 WL 5033488 (N.D. Ill. Apr. 22, 2021) ........................................................6

*Wireless Consumers v. T-Mobile USA*,
   2003 WL 22387598 (N.D. Cal. Oct. 14, 2003)......................................................8

*Zimmer Enters. v. Atlandia Imps.*,
   479 F. Supp. 2d 983 (S.D. Ohio 2007)..................................................................3

**Statutes**

28 U.S.C § 1404(a)............................................................................ 1, 2, 3

Securities Exchange Act of 1934, 15 U.S.C. § 78a et seq.......................................1, 2

## TABLE OF ABBREVIATIONS

| Docket Abbreviations | |
|---|---|
| *Craig* | *Craig v. Target Corporation*, 2:23-cv-00599 (M.D. Fla.) |
| Deriv. Dkt. | *In re Target Corp. Shareholder Derivative Litigation*, 2:25-cv-00021 (M.D. Fla.) |
| *Ranacis* | *Ranacis v. Cornell*, 0:25-cv-02743 (D. Minn.) |
| Sec. Dkt. | *In re Target Corp. Securities Class Action Litigation*, 2:25-cv-00135 (M.D. Fla.) |
| **Other Abbreviations** | |
| Collection | Target's 2023 Pride Collection |
| *Craig* Tr. | Transcript of Oral Arg. on Defs.' Mot. to Transfer This Action, *Craig* Dkts. 68, 103 |
| Deriv. AC | Consolidated Am. Stockholder Deriv. Compl., Deriv. Dkt. 49 |
| Deriv. Opp. | Derivative Pls.' Opp'n to Defs.' Omnibus Mot. to Transfer, Deriv. Dkt. 56 |
| Downs Decl. | Declaration of Brian K. Downs in Further Support of Defs.' Omnibus Mot. to Transfer |
| Moos Decl. | Declaration of Erin Rath Moos in Support of Target's Omnibus Mot. to Transfer, Sec. Dkt. 50-2 and Deriv. Dkt. 51-2 |
| Mot. | Defs.' Omnibus Mot. to Transfer, Sec. Dkt. 50 and Deriv. Dkt. 51 |
| Ohio | State Teachers Retirement System of Ohio |
| Ohio Opp. | Resp. of State Teachers Retirement System of Ohio to Defs.' Omnibus Mot. to Transfer, Sec. Dkt. 64 |
| SBA | State Board of Administration of Florida |
| SBA Opp. | Mem. of Law in Opp'n to Defs.' Renewed Mot. to Transfer, Sec. Dkt. 65 |

vi

Plaintiffs seek to represent a nationwide class and Target itself.  Yet they ask the Court to reach the same conclusion as in *Craig*, based on arguments five *individuals* made then about their chosen forum.  *First*, Supreme Court precedent bars that result: in representative actions there's no special deference.  *Second*, material undisputed changes favor Minnesota.  *Third*, those changes tilt the key transfer factors, which now decisively favor Minnesota: the home of three critical nonparty witnesses, the legally relevant events, and applicable law.  *Fourth*, Plaintiffs' attempts to avoid the merits fail.

## I.    THE SUPREME COURT REJECTS SPECIAL DEFERENCE.

The Supreme Court holds that in representative actions—class and derivative actions—deference to a plaintiff's chosen forum is "considerably weakened." *Koster v. Am. Lumbermens Mut. Cas.*, 330 U.S. 518, 524 (1947); Mot.13-14.  That is undisputed. Nor do Plaintiffs dispute that their chosen forum is entitled to even less deference, as:

- the presumptive lead securities plaintiff (Ohio) and vast majority of class members are outside of Florida.  Mot.14.  Only 6% of putative class members are in Florida, while *16%* (approximately *3 times* as many) are in Minnesota.  Downs Decl.¶5.[1]
- Target (the true derivative plaintiff) is based and incorporated in Minnesota, while all plaintiffs seeking to represent Target reside outside Florida.  Mot.6.

Instead, Plaintiffs say that their chosen forum is entitled to special deference as the Exchange Act contains a broad venue provision.  SBA Opp.4; Ohio Opp.5; Deriv. Opp.10-11.  The Supreme Court has rejected this theory.  Before the passage of Section

---

[1] Ohio attempts to limit *Koster* to cases where the plaintiff's only argument against transfer is that he brought the case in "his home" and argues transfer should be denied because "potential class members [are] located here."  Ohio Opp.6.  But *Koster* holds that the court has "responsibility toward the whole class" and, therefore, a transfer motion "may require consideration of [the court's] relation to the whole group of members and stockholders."  330 U.S. at 525-26.  Thus, the question is not whether some potential class members reside in Florida, but whether the class as a whole has a greater relation to Florida or Minnesota.  As the Downs Declaration shows, the answer is Minnesota.

1404(a), it held that special venue provisions "cannot be frustrated for reasons of convenience," but if that "is deemed unjust, the remedy is legislative." *Balt. & O.R. v. Kepner*, 314 U.S. 44, 54 (1941).[2]  Congress passed Section 1404(a) to address this injustice, requiring courts to analyze the transfer factors for the "convenience of the parties[,]…witnesses…[and] justice." *U.S. v. Nat'l City Lines*, 337 U.S. 78, 81 n.2 (1949); *see Collett*, 337 U.S. 55, 61, 69 (1949) (unjustness showed "need for §1404(a)").

Thus, reading the Exchange Act's venue provision as creating special deference would override both Congress's will and Supreme Court authority.  That is why "the clear weight of authority is that nothing in [the Exchange Act] alter[s] the standard…in deciding whether transfer is appropriate," *Ravenwoods v. Bishop*, 2005 WL 236440, at *8 (S.D.N.Y. Feb. 1, 2005) (collecting cases), district courts routinely transfer Exchange Act claims, Mot.14 (collecting cases),[3] and appellate courts direct transfer on mandamus where it is improperly denied (including where the action is subject to a broad venue provision), *In re 3M*, 2020 WL 13924735, at *2 (3d Cir. Nov. 18, 2020).[4]

To be sure, there may be cases where transfer of Exchange Act claims is

---

[2] The special venue provision at issue in *Kepner* (under the Federal Employers' Liability Act) authorized venue in any district in which the defendant does business.  314 U.S. at 54.

[3] Plaintiffs say that courts frequently deny transfer motions in Exchange Act cases.  Deriv. Opp.11-12 & n.3.  But those cases, which Plaintiffs recycle from *Craig* briefing (*see Craig*, Dkt. 83, at 8), **all** involved **individual** actions, not representative ones where Plaintiffs' forum choice is "considerably weakened." *Koster*, 330 U.S. at 524.  Plus, in those cases, plaintiffs alleged **actual** reliance as to private transactions rather than the presumption of reliance based on a fraud-on-the-market theory ("FOTM").  Actual (unlike presumed) reliance makes plaintiffs' conduct and evidence (and thus their residence and convenience) relevant. *Cf. Halbert v. Credit Suisse*, 358 F. Supp. 3d 1283, 1286-87 (N.D. Ala. 2018) (the only FOTM case, an **individual** action where there was "no single locus of operative facts").

[4] *See also In re Volkswagen*, 28 F.4th 1203, 1207 (Fed. Cir. 2022); *In re TracFone Wireless*, 852 F. App'x 537, 540 (Fed. Cir. 2021); *In re Samsung Elecs.*, 2 F.4th 1371, 1375-80 (Fed. Cir. 2021); *In re Apple*, 979 F.3d 1332, 1336-37 (Fed. Cir. 2020); *In re TS Tech USA*, 551 F.3d 1315, 1318 (Fed. Cir. 2008).

unwarranted, but only where the Section 1404(a) factors independently weigh against transfer. *See Manchin v. PACS Grp.*, 2025 WL 1276569, at *12 (S.D.N.Y. May 1, 2025) (New York-based co-defendants, New York-based due diligence, and the non-New York defendant had agreed to a related New York forum clause); *Gen. Ret. Sys. of Det. v. Wells Fargo Mortg. Backed Sec. 2006-AR18 Tr.*, 2009 WL 2137094, at *2 (N.D. Cal. July 16, 2009) (plaintiff resided, defendant was headquartered, and case was about real property in California).  This is not such a case.  Mot.13-25.[5]

## II.    KEY CHANGES SINCE *CRAIG* FAVOR TRANSFER TO MINNESOTA.

The Court need not "confine its venue consideration as to the facts as they existed" before.  *Cordis Corp. v. Siemens-Pacesetter*, 682 F. Supp. 1200, 1201 (S.D. Fla. 1987); *Craig*, 2024 WL 4981026, at *2 (citing *Stewart Org. v. Ricoh Corp.*, 487 U.S. 22, 34 (1988) (Scalia, J., dissenting) (transfer is based on "facts that currently exist or ***will*** exist")).  Thus, the most on point case (which Plaintiffs ignore) held that converting an individual securities action into a class action decisively favored transfer. *Umbriac v. Am. Snacks*, 388 F. Supp. 265, 271 (E.D. Pa. 1975).  Here, that same change and ***additional*** material changes since the *Craig* transfer decision decisively favor transfer.

- **Class**. *Craig* was an ***individual*** action; there is now a putative ***nationwide class*** of thousands of investors, Sec. Dkt. 44.  Only 6% of those are based in Florida, while ***16%*** (nearly ***3 times*** as many) are in Minnesota, Downs Decl. ¶5.  The 5 *Craig* individuals are not prosecuting the action (having chosen to become absent class

---

[5] Relatedly, the Derivative Plaintiffs argue that the "first-filed rule" applies, Deriv. Opp.3, but that rule—which merely "permits a court to decline jurisdiction over an action"—has no bearing on the transfer analysis. *See e.g., Lewis & Clark Reg. Water Sys. v. Carstensen Contracting*, 339 F. Supp. 3d 886, 892 (D.S.D. 2018) (transfer and first-to-file are "separate questions with separate analyses"); *Johnson Bros. Liquor v. Bacardi*, 830 F. Supp. 2d 697, 711 (D. Minn. 2011); *Zimmer Enters. v. Atlandia Imps.*, 478 F. Supp. 2d 983 (S.D. Ohio 2007).  Even in the case cited by Plaintiff, the court transferred to the second filed venue. *Everest Indem. Ins. Co. v. Ro*, 200 F. Supp. 3d 825, 832 (D. Minn. 2016).

members), and the presumptive lead plaintiff is *Ohio*, Sec. Dkt. 56-57.

- **Derivative claims**. Nor do Plaintiffs dispute that (1) the derivative action is new; (2) Target, the real plaintiff, is based and incorporated in Minnesota; and (3) the claims sound in *Minnesota* law and are subject to its demand futility law, Mot. 6-7.

- **Evidence**. New sworn evidence decisively favors transfer. Mot. 17-20. Since the *Craig* transfer decision, at least three critical witnesses have left Target; those former senior executives are in Minnesota and can't be compelled to attend trial in Florida. Moos Decl. ¶51.[6] Defendants' proof also shows that the key legally relevant facts, including risk oversight, took place in Minnesota, *id.* ¶¶27-32. *Infra* III.

These differences matter. *Craig* Tr. 6:7-8 (even "small facts…can change a [transfer] result quite easily"); *Meterlogic v. Copier Sols.*, 185 F. Supp. 2d 1292, 1305 (S.D. Fla. 2002) ("[n]ew parties and factual circumstances" tipped transfer analysis); *Umbriac*, 388 F. Supp. at 271 (same for change from individual to securities class action).

## III.   THE TRANSFER FACTORS DECISIVELY FAVOR MINNESOTA.

### A.   #1 Most Important Factor (Non-Party Witnesses) Favors Transfer.

As this Court holds, convenience of nonparties is "one of the most important factors" for transfer, *Craig*, 2024 WL 4981026, at *3.[7] Defendants identified 3 critical nonparty witnesses in Minnesota. Mot. 10, 15-17. Each was a senior executive uniquely positioned to address the four key pillars of Plaintiffs' case. *See Odem v. Centex Homes*, 2008 WL 11427941, *2 (M.D. Fla. July 8, 2008) (transfer based on declaration that "practices [we]re developed by…executive-level employees who work at the Company's headquarters" and convenience of such former executives). Specifically:

- **Risk**. Plaintiffs say the Collection was unduly risky due to its content and

---

[6] Thus, Plaintiffs are wrong to say those points could have been raised in "prior briefing." SBA Opp.5.

[7] Plaintiffs cite *Manuel v. Convergys Corp.*, 430 F.3d 1132, 1136 (11th Cir. 2005) for what they say is the standard (Deriv. Opp.3), but *Manuel* was an individual action involving a forum selection clause. *Koster* modifies the standard for representative actions, lowering the deference to plaintiff, *supra* I.

prominence. *SBA* Compl. ¶201; *Riviera* Compl. ¶53; Deriv. AC ¶7. As the former Chief Growth Officer, **Hennington** could speak to the business reason for the Collection and other heritage collections, the review of its content, and the interests Target balances. Moos Decl. ¶¶15-20, 27-31, 37-38. As the former Chief Operating Officer, **Mulligan** could speak to the Collection's placement in the context of Target's overall merchandising operations. *Id.* ¶¶18-22, 38-39.

- **Oversight**. Plaintiffs say Target told investors it oversaw Collection risk, but the "senior executive team…pushed the [Collection] without regard for those risks." *Riviera* Compl. ¶115; *accord SBA* Compl. ¶¶200-04, 411. **Hennington** could speak to Target's risk assessment before and after the Collection's release; **Mulligan** could address how Target executed on that risk assessment. Moos Decl. ¶¶28-31, 33-40.

- **Backlash**. Plaintiffs say Target falsely claimed it received threats and made changes to the Collection as a result. *See SBA* Compl. ¶¶245-61; *Riviera* Compl. ¶¶53-54; Deriv. AC ¶¶127-33. As the former Chief Stores Officer, **Schindele** could address how stores and employees were impacted by the backlash. Moos Decl. ¶¶35-38.

- **Revelation**. Plaintiffs say **Hennington** "revealed" that safety concerns were false on the Q2'23 earnings call when she referenced "headwinds" from the Collection. *SBA* Compl. ¶¶237, 260-61, 449; Deriv. AC ¶137. **Hennington** could testify about the meaning of her statement and whether it revealed hidden motivations.

These witnesses are also critical to Target's scienter defense. Plaintiffs seek to impute scienter to Target through Cornell alone. *See SBA* Compl. ¶¶404-15; *Riviera* Compl. ¶¶108-17. All 3 nonparties were among the most senior Target executives who reported directly to and interfaced with Cornell. As this Court has held, "to properly evaluate the witnesses' credibility[,] live testimony…may be necessary," *Fairstein v. Netflix*, 2020 WL 5701767, at *8 (M.D. Fla. Sept. 24, 2020). That's especially true for fraud claims. *See Seeberger Enters. v. Mike Thompson Recreational Vehicles*, 502 F. Supp. 2d 531, 539 (W.D. Tex. 2007) (remote testimony is "poor substitute for live testimony" for fraud allegations); *Aon Corp. v. Cabezas*, 2018 WL 1184728, at *3 (N.D. Ill. Mar. 7, 2018); *ThroughPuter v. Microsoft*, 2022 WL 874319, at *12 (E.D. Va. Mar. 23, 2022).

Plaintiffs don't dispute any of this. Instead, SBA quibbles that "employee

separations after the initiation of litigation should [not] be considered." SBA Opp.8. But the fact that witnesses are no longer within Target's control is a key change. *Taaffe v. Robinhood Mkts.*, 2020 WL 13547887, *2 (M.D. Fla. Apr. 13, 2020) (transferee court "more likely to be able to compel the live testimony of any [defendant] employees who depart").[8] Plaintiffs also quibble that Defendants must make an evidentiary showing that these witnesses are unwilling to travel to Florida for trial. SBA Opp.9; Ohio Opp.7; Deriv. Opp.17. Not so. Courts assume that former employees will need to be compelled. *Clinton v. Security Benefit Life*, 2020 WL 6120565, at *7 (S.D. Fla. June 29, 2020) ("While neither party suggests that any of the potential witnesses in this case would be unwilling to appear, this factor favors transfer because most of the potential witnesses are beyond 100 miles."); *Osgood v. Discount Auto Parts*, 981 F. Supp. 2d 1259, 1266 (S.D. Fla. 2013) ("[I]t is likely that subpoenas will be required to ensure appearances of [movant's] former employees."). This Court itself focused on Target's ability to compel employees in *Craig,* but that now strongly favors transfer. *Compare Craig*, 2024 WL 4981026, at *3 ("weight given to the convenience of witnesses factor is significantly diminished where the witnesses are employees"), *with Willison v. Smithfield Packaged Meats*, 2021 WL 5033488, at *2 (N.D. Ill. Apr. 22, 2021) (transfer where witnesses "no longer work for" movant and were based in transferee forum).[9]

---

[8] Ohio noted that Hennington was still a strategic advisor to Target as of the time of their opposition, Ohio Opp.7 n.4, but as of September 7, Hennington is no longer with the Company, Mot.10, 17.

[9] Contrary to the Derivative Plaintiffs' claim, Deriv. Opp.16, there is nothing speculative about Moos's declaration. Even an attorney declaration that identifies witnesses "by category…rather than by name" is sufficient to support transfer. *Bell v. Rosen*, 2015 WL 5595806, at *8 (S.D. Ga. Sept. 22, 2015). Moos went much further, identifying key witnesses by name and testifying to their involvement

**B.    #2 Most Important Factor (Locus of Operative Facts) Favors Transfer**.

As set forth above, the locus of operative facts is where Target made and issued the relevant statements and oversaw risk: Minnesota. Mot.19-20; Moos Decl. ¶¶41-46 (preparation, review, and issuance of *all* statements in Minnesota), ¶¶9-40 (oversight of risk and backlash in Minnesota). Plaintiffs have no answer. Instead, they repeat the points the *Craig* plaintiffs made—none of which is about locus. They say:

- the statements were "directed to investors everywhere," Ohio Opp.12. But the "center of gravity of this case plainly is in [Minnesota]," because "virtually all of the critical events occurred [there]": "the information used in the proxy statements was collected in [Minnesota], the proxy statements were drafted in and issued from [Minnesota]…, and all of the business decisions contested by Plaintiffs were made in [Minnesota]." *Ravenwoods*, 2005 WL 236440, at *5-6.[10]

- that some shareholder meetings were outside Minnesota, *see* Deriv. Opp.18. But Plaintiffs don't allege misstatements or oversight issues at those shareholder meetings. Mot. 19-20 & n.18 (citing *Clinton*, 2020 WL 6120565, at *6 (locus where "materials and decisions" were made (HQ), not where they were communicated)).

- that witnesses may have worked remotely. Deriv. Opp.17. But the evidence shows these witnesses worked out of Target's headquarters in Minnesota and, if they worked remotely, they did so from Minnesota, where they reside. Moos Decl. ¶50.

**C.    The Other Factors Favor Minnesota**.

**Parties**. Plaintiffs say that most Defendants are outside Minnesota. But Target—not only a defendant, but also the real plaintiff in the derivative action—is based in Minnesota, and the unrebutted evidence shows that all Directors met often in

---

based on personal knowledge and business records. *Melo v. Zumper, Inc.*, 439 F. Supp. 3d 683, 696 (E.D. Va. 2020) (transfer where affidavit based on personal knowledge and business record); *Enigma Software Grp. USA v. Malwarebytes Inc.*, 260 F. Supp. 3d 401, 404 n.1 (S.D.N.Y. 2017) (same).

[10] The two cases Plaintiffs cite do not hold otherwise. *See Dusek v. JP Morgan Chase & Co.*, 2015 WL 12819406, at *2 (M.D. Fla. Jan. 16, 2015) (holding that "[t]he locus of operative facts is clearly the [transferee] area"); *Halbert*, 358 F. Supp. 3d at 1287 (no clear locus where the offering was "prepared in [transferee forum]" but the company was based in a different state, which was where "substantially all [the] employees involved in calculating and updating" the offered notes were located).

7

Minnesota. Mot. 13-14, 20.[11] By contrast, none of the lead plaintiffs reside in Florida, and only 6% of putative class members reside in Florida (16% in Minnesota), *supra* II.

**MN Law**. Plaintiffs mistakenly claim Minnesota law is the same as in Delaware, making neither court preferable. Deriv. Opp.12-14. But "Delaware and Minnesota law differ…[as to] demand futility." *In re Medtronic Deriv. Litig.*, 68 F. Supp. 3d 1054, 1062 (D. Minn. 2014). And the parties' disagreement regarding Minnesota law demonstrates that Plaintiffs are asking the Court to improperly "untangle problems…in law foreign to itself." *Am. Dredging v. Miller*, 510 U.S. 443, 448-49 (1994) (Scalia, J.). Worse, Plaintiffs asked the Minnesota derivative plaintiffs to withdraw their claims, Ex.A at 5; Ex.B ¶11, "to avoid [an unfavorable] precedent" in Minnesota, which "weighs heavily" in favor of transfer. *Wireless Consumers v. T-Mobile USA*, 2003 WL 22387598, at *3, 5 (N.D. Cal. Oct. 14, 2003). Plaintiffs are the forum shoppers.[12]

**State interest**. "No principle of corporation law and practice is more firmly established than a State's authority to regulate domestic corporations." *CTS Corp. v. Dynamics Corp.*, 481 U.S. 69, 89 (1987). Plaintiffs do not dispute that Minnesota has an interest in policing its resident corporations. *See* Mot.24. Instead, Plaintiffs claim that Florida has an interest in "federal securities claims brought by its residents," Ohio

---

[11] The Derivative Plaintiffs' claim to convenience is even more tenuous. They say they prefer Florida, as, they say, it is a "leader in actively opposing DEI" (Deriv. Opp.19). But that doesn't serve Target's convenience or interest, which violates their "fiduciary" duty to Target. *See Koster*, 330 U.S. at 525.

[12] By contrast, Defendants have *always* argued that venue is more convenient in Minnesota, *Craig*, Dkt. 68 (moving to transfer prior to any adverse rulings), eliminating any suggestion of forum shopping. Plaintiffs cite *Gaetano v. Gilead Scis.*, 2021 WL 3185822 (D.N.J. July 27, 2021)*, which is inapposite*. SBA Opp.2. There, the court accused defendant of forum shopping by "strateg[ically]… moving to dismiss, and then moving to transfer," which is not the case here. *Id.* at *6.

8

Opp.10. But "nothing about this case is local," as Plaintiffs "represent a class of [1000s of] investors situated around the globe." *See 3M*, 2020 WL 13924735, at *2. Nor does that reasoning work for the derivative claims, where derivative Plaintiffs must serve Target's interests as a Minnesota corporation. *See Koster*, 330 U.S. at 525.

**Trial efficiency**. Trial efficiency turns on witness location, favoring Minnesota; the limited initial proceedings don't change that, Mot.24.[13] While the Court has ruled on the *Craig* motion to dismiss, courts transfer cases that are far more procedurally advanced, *Meterlogic*, 185 F. Supp. 2d at 1299 (transfer after motion to dismiss and start of discovery). Plus, if the Court grants this motion, it would not need to select a securities lead plaintiff.[14] And a Minnesota court is already adjudicating an action Plaintiffs concede raises "substantially the same alleged wrongdoing" (Deriv. Dkt. 56-1), which has set a hearing on whether to reach the merits of demand futility, Ex.C.

## IV.    PLAINTIFFS CANNOT ESCAPE THE MERITS OF TRANSFER.

Plaintiffs claim that Defendants "seek[] reconsideration" of *Craig*. SBA Opp.4-5. Not so. Defendants are moving to transfer these actions (which did not exist back then) for the first time.[15] Besides, courts regularly consider, and grant, transfer motions upon changed facts or procedures, even in the same case. *Umbriac*, 388 F.Supp. at 271

---

[13] Ohio agrees that the document location and parties' means are neutral. Ohio Opp.13-14. SBA argues that *Craig* held document location "favors Plaintiffs," SBA Opp.3. But *Craig* simply accepted Plaintiffs' argument that "modern technology largely *neutralizes*" this factor, and thus found the Minnesota location of documents did "not weigh in favor of transfer," 2024 WL 4981026, at *4.

[14] *E.g.*, *Kadel v. Flood*, 2008 WL 11333160, at *1 (S.D. Fla. Mar. 18, 2008) (lead plaintiff decision stayed pending transfer decision); *Tang v. Eastman Kodak*, 2021 WL 2155057, at *10 (D.N.J. May 27, 2021).

[15] The *Craig* Plaintiffs chose to subsume their claims within the class and cannot now complain of prejudice, especially as they were warned of the risks of doing so, *Craig*, Dkt. 114, at 14-19.

(new class claims); *Meterlogic*, 185 F.Supp.2d at 1305 ("[n]ew parties and factual circumstances"); *cf. Valentino v. Eli Lilly & Co.*, 2015 WL 4352321, at *9 n.11 (M.D. Fla. July 14, 2015) ("Court may wish to entertain a renewed motion for transfer" if "circumstances change"). Plaintiffs offer no contrary authority. Their sole case involved denial of summary judgment reconsideration in the *same* case, where, unlike here, the party argued no changed circumstances. *See* SBA Opp.4-5 (citing *Terrace III v. Empire Indem. Ins.*, 2021 WL 3633629, at *1-2 (M.D. Fla. Aug. 17, 2021)).

Finally, Plaintiffs claim this motion is untimely. SBA Opp.1-2. But courts routinely transfer on similar (and far longer) timelines.[16] And here, the actions are in their "procedural infancy" with "[n]o trial or discovery deadlines…scheduled," which further supports transfer. *Short v. Embraer*, 2021 WL 8918982, at *5 (S.D. Fla. Sept. 30, 2021).[17] Defendants filed right after consolidation; before dispositive motions, discovery, or a securities lead plaintiff appointment.[18] Nor can Plaintiffs claim prejudice; they waited 18 months after *Craig* was filed to bring suit.[19]

Thus, Defendants respectfully request transfer to the District of Minnesota.

---

[16] *Bankers Ins. v. DLJ Mortg.*, 2012 WL 515879, at *4 (M.D. Fla. Jan. 26, 2012) (2 years); *Osgood*, 981 F. Supp. 2d at 1266 (19 months); *Clinton*, 2020 WL 6120565, at *3 (collecting similar cases).

[17] Plaintiffs' authority supports this principle. *See Willis v. Okeechobee*, 2012 WL 12845648, at *2 (S.D. Fla. Aug. 16, 2012) (SBA Opp.1-2) (transfer untimely where parties were "conducting discovery").

[18] SBA says that Defendants failed to respond to SBA's complaint and weighed in on consolidation. SBA Opp.2. But Defendants' response deadline was extended pending the choice of lead plaintiff and filing of an amended complaint, neither of which has occurred. *Riviera* Dkt. 39; Sec. Dkt. 66-1. And the Court required that all parties provide their position on consolidation. *SBA*, Dkt. 33.

[19] Plaintiffs also suggest that "Defendants are speaking out of both sides of their mouth" by "ask[ing] the Minnesota court to stay" the Minnesota derivative action pending resolution of the securities class action, but then "cit[ing] the Minnesota case" [on transfer]. SBA Opp.8. There's no inconsistency: the actions all belong in Minnesota, and any derivative actions should be dismissed or, alternatively, stayed until the securities action resolves. Deriv. Dkt. 61; *Ranacis*, Dkt. 33 (D. Minn.).

10

Dated: September 9, 2025

Respectfully submitted,


/s/ Sandra C. Goldstein

Traci T. McKee
FAEGRE DRINKER BIDDLE &
REATH LLP
1500 Jackson Street, Suite 201
Fort Myers, Florida 3390
Telephone: (239) 286-6910
traci.mckee@faegredrinker.com


Jeffrey P. Justman (*pro hac vice*)
FAEGRE DRINKER BIDDLE &
REATH LLP
2200 Wells Fargo Center
90 South 7th Street
Minneapolis, Minnesota 55402
Telephone: (612) 766-7000
jeff.justman@faegredrinker.com


Sandra Grannum (*pro hac vice*)
FAEGRE DRINKER BIDDLE &
REATH LLP
600 Campus Drive
Florham Park, NJ 07932
Telephone: (973) 549-7000
sandra.grannum@faegredrinker.com

Sandra C. Goldstein, P.C. (*pro hac vice*)
   *Lead Counsel*
Alexander J. Rodney (*pro hac vice*)
Jacob M. Rae (*pro hac vice*)
Ashley P. Grolig (*pro hac vice*)
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
Telephone: (212) 446-4779
sandra.goldstein@kirkland.com
alexander.rodney@kirkland.com
jacob.rae@kirkland.com
ashley.grolig@kirkland.com


*Counsel for Defendants and Nominal
Defendant*

11

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on September 9, 2025, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which provided electronic service upon all counsel of record.

/s/ Sandra C. Goldstein

Sandra C. Goldstein, P.C. (*pro hac vice*)
*Lead Counsel*
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
United States
Telephone: (212) 446-4779
sandra.goldstein@kirkland.com

12